CHICAGO & MICH. L. S. R. R. CO. *v.* SANFORD.

## The Chicago and Michigan Lake Shore Railroad Company v. Whitfield Sanford and others.

*Inquest of damages under general railroad law : Verdict must be unanimous.* The verdict of a jury of inquest, under the general railroad law, must be unanimous, and a verdict signed by less than all is a nullity.

*What requisite in petitions in such proceedings : Each parcel of land must be described : Inability to agree with owner.* Under the statute, as amended, the petition need not show an intention to build the entire road, if a division of fifteen miles has been lawfully designated; but in such case it must appear in the petition affirmatively that such division has been lawfully made in such manner as to conform to the statute.

When the land of several persons is sought to be appropriated, each parcel must be distinctly described, and the purposes for which it is wanted, and reasons why it is necessary to proceed under the statute to take it must be given. Parcels may not all be needed for the same purpose, and the same reasons for proceeding adversely may not exist in all cases.

The fact of inability to agree with the owner is jurisdictional, and may be controverted like any other fact.

*General finding of single sum for land of several owners, invalid.* Each owner has a right to have a finding as to the value of his land and the necessity of taking it; and a general finding, giving a single sum for taking the land of several owners, is invalid.

*Practice in supreme court : Petition too defective to maintain proceedings.* A petition not distinguishing the lands of several owners, nor showing the cause of proceeding against each, is too defective to maintain proceedings, and when a verdict under it is set aside the case cannot be referred back to a new jury, but the parties must proceed by a new application.

*Heard July 11. Decided October 4.*

Appeal from the Probate Court of Berrien county.

This is an appeal of Whitfield Sanford from proceedings on the part of the Chicago and Michigan Lake Shore Railroad company against said Whitfield Sanford and Andrew Crawford, Andrew H. Green and William Furguson to condemn certain lands, in which they were interested, in the village of Benton Harbor, for the use of said road.

The petition in the case was as follows, viz:

Your petitioner, the Chicago and Michigan Lake Shore Railroad company, respectfully shows that the Chicago and Michigan Lake Shore Railroad company is a duly organized company, and was organized under and by virtue of an act entitled "An, act to provide for the organization of

railroad companies," approved February 12, 1855, and the amendments thereto; that it is the intention of said railroad company, in good faith, to construct and finish a railroad from lot eighty-seven, in the village of St. Joseph in the county of Berrien, to the north line of section five, in the township of Columbia, in the county of Van Buren, in said state, the same being designated as division number two, of the Chicago and Michigan Lake Shore Railroad; that the capital stock of said company has been in good faith subscribed as required by the terms of said act, and the amendments thereto; that said company has surveyed the route of its proposed road in said county of Berrien, and made a map and survey thereof, by which said route is designated, and that they have located their said road according· to such survey, and filed a certificate thereof, signed by a majority of the directors of said company, together with a map and survey of its said proposed railroad, in the office of the register of deeds of the said county of Berrien; that the property hereinafter described is required for the purpose of constructing, operating or repairing the said proposed railroad or its appurtenances, and that the said Chicago and Michigan Lake Shore Railroad company has not been able to acquire title thereto by voluntary conveyance or for such price or sum as the said company is willing to pay, or believe it ought of right to pay, therefor; that most of the persons, claiming an interest in said premises and claiming the principal interest therein, are not residents of the state of Michigan; and your petitioner has not been able to acquire the title thereto, by reason of such non-residence, and further, for the reason that the persons claiming most of the title in fee thereto, refuse to grant the same, except on such terms and conditions as your petitioner deems unjust and unreasonable, and greatly to the lasting detriment and injury of your

petitioner, or at an exorbitant price therefor; that said tracts or parcels of land are described as follows, to wit: The southeast quarter of section thirteen, in township four south, of range nineteen west, in the county of Berrien, state of Michigan; and so much of the west half of the west half of the southwest quarter of section eighteen, in township four south, of range eighteen west, in said county, as lies north of the westerly line of Water street, in the village of Benton Harbor, as by the recorded plat of said village, and south of a five-rod strip on the north side of said quarter section; that the center line of said proposed railroad as now surveyed and located by the said railroad company, reference being had to the map and survey thereof, now on file in the office of the register of deeds for said county of Berrien, enters the first of said described tracts or parcels of land, on the west line thereof, two hundred and four feet north of the southwest corner thereof, running thence north seventy-nine degrees east, magnetic, two thousand and three feet to a tangent point; thence on a three degree curve to the north with one thousand nine hundred and ten feet radius, six hundred and ninety-seven feet, to the point of departure from the same, on the east line thereof, distant six hundred and ninety-five feet north of the southeast corner of the same; and enters said last described tract or parcel of land on the west line thereof, six hundred and ninety-five feet north of the southwest corner of said section eighteen aforesaid, running thence easterly on the curve line above described six hundred and fourteen feet to a tangent point, thence north thirty-nine degrees, forty minutes east, magnetic, two hundred and fifteen feet, more or less, to the point of departure therefrom, on the east line thereof, distant one thousand two hundred and thirty feet north of the south line of said section eighteen.

And your petitioner further shows that for the purpose of constructing, operating or repairing the said proposed railroad or its appurtenances, it is necessary to have, and they seek to acquire, so much of said first described tract of land as lies within three rods on each side of said center line as above described, embracing one and six-tenths acres of land; and so much of said last described tract as lies within three rods on each side of said center line, from the west side of said tract easterly, six hundred and fourteen feet, more or less, to the west side of the street or highway running north from the said village of Benton Harbor, commonly called the town line road, and for general depot purposes so much thereof as lies within 150 feet on each side of said center line, from the west side of said street or highway to the east line of said tract, and embracing two and nine-tenths acres.

And your petitioner further shows that the persons and their residences, so far as the same can with reasonable diligence be ascertained, owning or having, or claiming to own or have, estate or interest in the said premises, or in some part thereof, are as follows, to wit: Whitfield Sanford, of Geneseo, in the state of Illinois; Andrew Crawford of Geneseo, in the state of Illinois; Andrew H. Green of the city of New York, in the state of New York, and William Furguson of Benton Harbor, Berrien county, and state of Michigan.

Your petitioner, therefore, prays for an order appointing three commissioners as provided by the terms of said act, and the amendments thereto, to ascertain and determine the necessity of taking and using the said property or franchises, as hereinbefore described, for the purposes aforesaid, and if they deem the same necessary to be taken for the purposes aforesaid, that they may then ascertain and determine the damages or compensation, which

ought justly to be made by your petitioner on account of any damages, or on account of the construction, repairing or operating of said railroad or its appurtenances to the said parties owning, claiming or interested in, the said above described premises, or in any part or portion thereof. And your petitioner will ever pray, etc.

The facts are sufficiently set forth in the opinion.

*C. B. Potter*, *M. J. Smiley* and *H. F. Severens*, for the appellant.

*D. A. Winslow* and *G. V. N. Lothrop*, for the railroad company.

CAMPBELL, CH. J.

The proceedings appealed from were taken under the general railroad law, to condemn certain lands for a right of way. The appellant demanded a jury, and the verdict was rendered and signed by eight out of twelve. The first question presented refers to this verdict.

The clause in the constitution, under which this jury was demanded, declares that, except when to be made by the state, the compensation to be made when property is taken, "shall be ascertained *by a jury of twelve freeholders, residing in the vicinity of such property, or by not less than three commissioners, appointed by a court of record, as shall be prescribed by law.*"—*Constitution, Art. XVIII., § 2.*

The section of the law referring to the powers of commissioners seems to contemplate that a majority of them may determine the compensation. It also declares that the jury shall proceed to determine the necessity of taking, and the compensation, "in the same manner, and with like effect, as is provided in this section in the case of commissioners, *but they shall all be present and act together*

*during the proceedings,"* etc.—*Comp. L.,* § *1965.* It is claimed that if the jury are all present and acting, the analogy to the functions of commissioners renders a majority verdict valid.

If the term "jury," as used in the constitution, authorizes any thing less than a unanimous verdict, it means what it does not signify in any other part of the constitution, or in any of our old statutes to which our attention has been turned. It is not claimed that in the absence of such a clause the provisions concerning "trial by jury" would prevent the state from having damages for lands taken for purposes of necessity assessed by other means. But, when a "jury" is provided, it is insisted by the appellant that it must be a jury in the common-law sense, deciding only by a unanimous verdict.

In examining our old statutes, it will be found that in the early railroad acts, and in the Central and Southern railroad charters, as well as in several others founded on them, the jury of inquest was allowed to consist of a less number than twelve. And it is claimed that the term "jury" was thereby made to embrace a body of men different from a common-law jury, and more in the nature of appraisers,—subject to different rules and authorized to act by majorities. And we are referred to *Cruger v. Hudson River R. R. Co.,* 12 N. *Y., 190,* where the corresponding clause in the New York constitution was construed to make them no more than a board of appraisers. The court base their decision on former practice and on statutes which allowed such bodies called "juries" to act in that way; and held that no new rule was intended.

We are not satisfied with the reasoning of that case (which is in conflict with *Lamb v. Lane, 4 Ohio St. R., 167,* where the subject was carefully discussed); but we do not deem it applicable here, as we never had any recognized

practice of the sort. As the constitution does not limit the number of commissioners except by a minimum, so that there may be twelve or any other number larger than three, it is difficult to understand why any thing was said about a jury at all, if its proceedings and powers were to be entirely subject to legislative regulation. If a jury does not mean a body acting substantially like a common-law jury it means nothing at all; and the provision is senseless.

Juries of inquest were as well known to the common law as juries for the trial of causes. But, unlike petit juries, they might formerly, in many cases, consist of more or less than twelve. But there seems to be no authority in modern times, and it is very doubtful whether there ever was any, favoring the idea that a verdict of twelve or less would be valid that was not unanimous. Our railroad charters, previous to the present constitution, generally, if not universally, have from the beginning denominated the jurors selected to fix the damages a "jury of inquest." They were neither called nor treated as mere appraisers; and while there are no decisions in this state on the question whether unanimity was required in their findings, it is probably for the same reason that there are in modern times none concerning the unanimity of petit jurors,—the necessity being taken for granted. It is to be remarked that our present constitution is more specific than that of New York, and requires a jury of *twelve* freeholders, thus introducing a more stringent rule than that which had obtained here before, and leaving the legislature no discretion as to numbers or quality. We think the constitution will not permit the jury so specifically provided for, to be changed into a mere board of appraisers, or to be treated as any thing but a jury of inquest. The statute must be so construed (as it may fairly be) as to render it valid in this regard. We are not called upon to decide whether the constitution can be satisfied without a concur-

rence of all of the three commissioners, where such are appointed, as the provisions concerning a jury do not strike us as open to any doubt. The verdict is a nullity.

But it becomes necessary to inquire further in order to determine whether the case can be properly sent back for a new jury.

The petition was objected to .as insufficient, because, instead of declaring it to be the intention of the company in good faith to construct and finish a railroad *"from and to the places named for that purpose in its articles of association,"* it avers such an intention only between certain points which are named, including thereby "Division number two," of the projected road. The section, under which the petition was filed, expressly requires the former averment. But by an amendatory statute of 1867, companies were under certain circumstances authorized "to designate a division of not less than fifteen consecutive miles" for construction, with "full power and authority to *construct, operate and maintain a railroad"* upon "the division thus designated."—*Sess. L. 1867, p. 107–8.* We think that when a company has complied with the statute, and designated such a division under circumstances authorizing it, an intention confined in terms to that part of the road would be sufficient, and the provisions of the section prescribing the contents of the petition may be modified according to the amendatory act, inasmuch as under the latter no forfeiture arises from a failure to build other parts of the road.—*Sess. L. 1867, p. 108, proviso.* But the petition must show the one thing or the other; and if it does not contain a compliance with the original section, it should aver such facts as to bring it within the amendment. It does not appear that there was any authority for setting apart division number two, nor that it is a division of not less

than fifteen consecutive miles,—all of which should be made to appear in some way.

It is also objected that the lands proposed to be taken are not specifically described, as they should be, but are set forth as two continuous parcels,—not showing in what portions the various persons described as the owners are interested. This objection may be considered with another that grew out of it, that the damages are not apportioned, but the value of the entire lands taken is given in one sum of two thousand dollars.

*Section 19* of the railroad law (*Comp. L.*, § *1963*), which directs what shall be set forth in the petition, contains no very positive requirement as to how the property shall be described, but there are some inferential reasons which would seem to make it necessary to go somewhat more into detail than is done here. The description in this petition contains little more than a general description of the central line of the road and of the location of the way by reference to it,—giving no information as to how it may affect smaller parcels, —while it distinctly appears that streets are crossed, and a village is entered. The section not only requires a "description of all the real estate, property or franchises, or so much thereof as the company seeks to acquire," but the purposes for which it is needed, and the reasons why the company has been unable to acquire title. The parties interested are to be described, and it is made lawful, though not necessary, perhaps, to state what encumbrances exist on the property or any of it.

The fact of inability to obtain title amicably is made a jurisdictional fact by *section 18* (*Comp. L.*, § *1962*), and might be controverted.—*Dyckman v. Mayor, etc., 5 N. Y., 434,* and cases cited in *Abbott's Dig., Corp., 186–7; Leslie v. St. Louis, 47 Mo.* (*Law Reg., Sept. 1871, p. 602*). It is mani-

fest that these reasons might not be the same in regard to various persons or parcels. But a principal difficulty arises out of the necessity of dealing with each owner's rights separately. Any person who is interested may demand a jury, and when one is demanded the inquiry does not extend to the case of those who have not demanded it. The language of the statute is that the jury shall "ascertain and determine the necessity for taking lands, franchises or other property, and to appraise and determine the damages or compensation to be allowed therefor to the owners or persons interested in *each particular description of real estate mentioned in said petition, who have demanded such jury*," etc. As to all others, the jury is "deemed to have been waived."—*Sec. 20. Section 24 (Comp. L., § 1968)* contains a provision for determining disputes where there are adverse claimants for money awarded as compensation.

No one can fail to observe that a verdict giving a round sum as damages for a continuous strip of land crossing several parcels, does not accomplish any thing whatever concerning the rights of the several owners. The land may be different in quality and value,—parts may be improved and parts unimproved,—small lots may be ruined, and larger ones may be damaged but a trifle. Unless each separate holding is viewed by itself, the owner's rights cannot be protected at all. It is not supposable that any legislation can have been intended to disregard private rights so recklessly. No man can be compelled to have his property exposed to such dealing. When the property taken is not for the state, every one is entitled to have some impartial tribunal pass, both upon the necessity of the taking, and the proper compensation to be made for it. He is interested in none but his own, and has a right to have his own rights passed upon and protected. He cannot be compelled to yield up a right of way until

it has been declared by competent and impartial authority necessary, nor if necessary, until his compensation has been fixed. This can only be done separately, or, at all events, by separate parcels.—*Rex v. Croke, Cowp., 26; Rex v. Manning, 1 Burr., 377.* It would be quite as sensible to allow one jury to try half a dozen actions of assumpsit and give one lumping verdict for them all, as to combine in one sum the damages of distinct land-owners. As the statute contemplates that when one person claims a jury no inquiry shall be made beyond his case, the inference is inevitable that the petition should show in what lands he is supposed to be interested. But the same necessity would arise in case of any number of claimants demanding that right. The jury or appraisers, as the case may be, are expected to deal with the rights of all severally and not jointly, when they have no joint interest.

It is evidently expected, under the statute, that when any person demands a jury, they will be able from the petition itself to understand what property is to be the subject of their investigation, and what necessity is claimed to exist for taking it. The necessity is not the same in all cases. If the road itself is found necessary, it may not be found necessary to lay it over the premises in dispute; and the necessity of the road may not involve the necessity of taking all that is sought for buildings and depot grounds. It is quite plain that a verdict which might be one way, if the property must all be considered and appraised together, might be varied in regard to particular parcels, both as to damages and necessity of use. Under most of our old statutes before the present constitution, each lot had to be made the subject of a separate application and proceeding. The present statutes have made one proceeding sufficient in each county, but they have not undertaken, and could not

lawfully undertake, to confound several interests, so as to compel one man's rights to be so mixed up with another's that the jury could not award each his proper dues.

The petition before us has undertaken to follow the language of the statute so literally as to prevent the several interests from appearing with any degree of certainty. And the result is that the verdict, following the same ambiguous course, has made no finding at all on the rights of the party appealing.

The whole proceedings, so far as they concern the appellant, must be quashed, and if the company desire to obtain a condemnation of his land they must commence new ones. He is entitled to costs of all the proceedings.

The other Justices concurred.