SADJAK *v.* PARKER-WOLVERINE CO.

1. WORKMEN'S COMPENSATION — HOSPITAL RECORDS — HEARSAY — RECORD MADE IN REGULAR COURSE OF BUSINESS.

In proceeding by dependent widow to recover compensation from decedent's employer, hospital records which indicate decedent fell from a ladder *held*, pure hearsay, of no evidentiary force and inadmissible under statute as a record made in the regular course of business where portion of record to which department of labor and industry gave consideration was matter told hospital authorities by decedent which did not refer to any act, transaction, occurrence, or event in the hospital treatment (3 Comp. Laws 1929, § 14207, as amended by Act No. 15, Pub. Acts 1935).

2. SAME—CORONER'S OFFICE RECORD—HEARSAY—RECORD MADE IN REGULAR COURSE OF BUSINESS.

In proceedings by dependent widow to recover compensation from decedent's employer, that portion of coroner's office record stating decedent had fallen off a ladder at employer's factory *held*, pure hearsay, of no evidentiary force and inadmissible under statute as to records made in the regular course of business (3 Comp. Laws 1929, § 14207, as amended by Act No. 15, Pub. Acts 1935).

3. EVIDENCE—RECORDS MADE IN THE REGULAR COURSE OF BUSINESS. Memoranda, made by persons who do not witness an event but who note matters related to them by other persons present thereat, are inadmissible as hearsay even though the record be one made by the recorder in the regular course of business and it was the regular course of business to make such record (3 Comp. Laws 1929, § 14207, as amended by Act No. 15, Pub. Acts 1935).

4. WORKMEN'S COMPENSATION—EVIDENCE—RES GESTÆ—REGAINING CONSCIOUSNESS.

Statements by decedent made to his wife and later to others in conversations held with him after he regained consciousness

during day following his injury in the late evening *held*, inadmissible as *res gestæ* in proceeding by dependent widow to recover compensation from decedent's employer where record does not show when decedent regained consciousness or that such statements were made at the moment consciousness was regained or before there was time to contrive and misrepresent.

5. SAME—REPORTS—EVIDENCE—ADMISSIONS.

Report to department of labor and industry of injury to employee, on form provided for noncompensable accidents, that decedent employee was found two blocks away from factory with his skull fractured and that he claimed he had fallen from a ladder in employer's plant *held*, not proof or an admission that accident arose out of and in the course of employment.

6. SAME — ACCIDENT — EVIDENCE — EMPLOYER'S ADOPTION OF EMPLOYEE'S CLAIM—REPORTS.

In proceeding by dependent widow to recover compensation from her late husband's employer, record *held*, without evidence that employer adopted claim of employee as to how accident happened by filing report of accident on form provided for noncompensable accident, setting forth employee's claim, or otherwise.

Appeal from Department of Labor and Industry. Submitted June 15, 1937. (Docket No. 99, Calendar No. 39,453.) Decided September 1, 1937.

Mary Sadjak, widow, presented her claim for compensation against Parker-Wolverine Company, employer, and Michigan Mutual Liability Company, insurer, for fatal injuries sustained by Rade Sadjak, while in defendant's employ. Award to plaintiff. Defendants appeal. Reversed.

*Wilkinson, Lowther & O'Connell (Kerr, Lacey & Scroggie,* of counsel), for plaintiff.

*L. J. Carey* and *Geo. J. Cooper,* for defendants.

BUSHNELL, J.   Mary Sadjak was awarded compensation because of the fatal injuries sustained by her husband who was employed in the boiler room of the Parker-Wolverine Company.  Decedent went to work at 6 p. m. on October 1, 1935.  Friends visited him about 10:30 p. m. the same evening and found him perfectly sober, but much disturbed over the loss of a sum of money.  They testified that they saw a small quantity of water dripping from a leaky valve located 12 to 14 feet above the floor level, and also that there were some wrenches on a bench and in an open tool box in the boiler room; that the drip from the leak was slight but there was a small pool of water covering a space from 4 to 6 inches in diameter on the floor.  Ladders were stationed in the corner of the boiler room, and in case of a leak while decedent was on duty, it would be incumbent upon him to repair it.  It would take 20 minutes to do this.

Between 10:30 and 11 p. m. two young women, while walking along the street, heard a man fall on the concrete walk near the steps of a beer garden about two blocks from the place where decedent was employed.  One of the women observed that the man fell forward on his face.  They found decedent lying on his face in a pool of blood.  The police, who were immediately notified, also found decedent in this condition and also noticed a pronounced odor of alcohol on his breath.  They immediately took him to the Receiving Hospital and notified his wife.  Upon her arriving at the hospital, she found him talking irrationally, his face being covered with blood.  She did not see decedent until the following noon, when he had recovered consciousness.  She testified that decedent told her he had fallen from the ladder while fixing the leaky valve, and that his head was struck by a wrench he was using, and also by the fall from

the ladder; that he went out to get some fresh air, and after going a short distance, collapsed. Employees, who later the same night went to the boiler room, found no blood on the floor, no ladders out of place, no wrenches or tools lying about, and no sign of any leak or water. The hospital record of admission, which the department considered, stated:— "there is a strong alcoholic odor to breath and he is talking foolishly," and the diagnosis as "acute alcoholism, possible skull fracture." The interne, of but limited experience, testified that decedent was suffering from alcoholism. Decedent had suffered a double lineal fracture of the skull in the right and frontal portions. After remaining in the hospital five days, he was removed to his home where, after a ten-days' stay, he was taken to another hospital, operated on almost immediately, and he died the following day.

The sole question presented by appellant is whether plaintiff met the burden of proof to establish that the decedent sustained a compensable injury that arose out of and in the course of his employment. Notwithstanding the objection of appellants' counsel, the department gave some consideration to certain portions of the hospital record which also stated that the decedent fell from a ladder. It is claimed that, as this statement is part of the hospital record, it was admissible under Act No. 15, Pub. Acts 1935, amending 3 Comp. Laws 1929, § 14207. We discussed the act in *Gile* v. *Hudnutt*, 279 Mich. 358, where we stated that the act contained its own limitations. What decedent told the hospital authorities did not refer to any act, transaction, occurrence, or event in the hospital treatment. The portion of the record thus objected to was pure hearsay and of no evidentiary force and inadmissible. Also, see, *Kelly* v.

*Ford Motor Co.,* 280 Mich. 378. The same objection applies to that portion of the coroner's office record, which stated "fell off ladder at Parker-Wolverine Company on October 1st." This statement was also pure hearsay and not of evidentiary force under Act No. 15, Pub. Acts 1935, amending 3 Comp. Laws 1929, § 14207. In considering a similar question under the New York Act, civil practice act, § 374-a, the court said in *Johnson* v. *Lutz,* 253 N. Y. 124 (170 N. E. 517), in reference to the admissibility of the report of a policeman who did not witness the accident:

"In view of the history of section 374-a and the purpose for which it was enacted, it is apparent that it was never intended to apply to a situation like that in the case at bar. The memorandum in question was not made in the regular course of any business, profession, occupation or calling. The policeman who made it was not present at the time of the accident. The memorandum was made from hearsay statements of third persons who happened to be present at the scene of the accident when he arrived."

Although there was testimony to the contrary, the department had a right to believe testimony that decedent with his injuries could have walked two blocks before the hemorrhage came to the surface. The department, however, based its decision on what decedent told plaintiff and later to others as to how he was injured. The conversation with plaintiff did not take place until noon of the following day. The department states that the record does not show when decedent regained consciousness, but that the statements were part of the *res gestæ.* The statements were not made at the time the injuries were sustained, nor is there any showing that they were made

at the moment consciousness was regained, so we need not discuss whether, if this were the case, the statements would have been admissible. The testimony does not show that the statements by decedent as to the cause of the injuries were made before there was time to contrive and misrepresent, so as to make them part of the *res gestæ* and bring them within the exception to the general rule as set forth in *Rogers* v. *Railway Co.*, 187 Mich. 490. This statement, as well as those to others including the doctor who first attended decedent on October 4, 1935, three days after the accident, were inadmissible. *Swedberg* v. *Standard Oil Co.*, 271 Mich. 184; *Green* v. *Sears, Roebuck & Co.*, 280 Mich. 568.

Appellant stresses the claim that inasmuch as the employer filed a report with the department, it is proof of the matter therein set forth. The report was on the form provided for a noncompensable accident. It sets forth as the natural cause of injury, that employee was found by police about two blocks from factory with his skull fractured; that he claimed that he had fallen from a ladder in the plant. The most the report admitted was that the accident, if any, was a noncompensable one and that decedent claimed it was caused by a fall from a ladder. This was not proof or an admission of an accident, that arose out of and in the course of employment, nor was there any evidence that the employer adopted the claim of the employee as to how the accident happened within the rule of *Ginsberg* v. *Burroughs Adding Machine Co.*, 204 Mich. 130.

The award is set aside, with costs.

FEAD, C. J., and NORTH, WIEST, BUTZEL, SHARPE, and POTTER, JJ., concurred. CHANDLER, J., did not sit.