## HARRISON v. LORENZ.

1. PRINCIPAL AND SURETY—FIDUCIARY'S BOND—STATUTES—JUSTIFICATION.

   The justification of a fiduciary's surety is not required by the probate code to be in writing (Act No. 288, chap. 4, § 5, Pub. Acts 1939).

2. JUDGMENT—IRREGULARITY IN APPROVED FIDUCIARY'S BOND—COLLATERAL ATTACK ON SPECIAL ADMINISTRATOR'S APPOINTMENT.

   Irregularity resulting in failure of special administrator's surety to execute oath relative to ownership of property equal to the amount of the bond which was filed and examined and approved by the probate court could not be the basis of a collateral attack on the appointment of the special administrator in his action against defendants for fatal injuries to plaintiff's decedent (Act No. 288, chap. 4, § 5, Pub. Acts 1939).

---

Requirements for exercise of court's power, see Restatement, Judgments, § 8 and comments.

Liability of vendor of chattel, see 2 Restatement, Torts, §§ 399, 400.

Liability for negligence in repairing chattel, see 2 Restatement, Torts, § 404.

3. EXECUTORS AND ADMINISTRATORS—ORDER AUTHORIZING INSTITUTION OF SUIT.

In special administrator's action for damages against defendants alleged to have negligently inflicted fatal injuries upon plaintiff's decedent, where plaintiff had filed a copy of order authorizing institution of suit in the cause it was unnecessary that the order be introduced in evidence.

4. JURY—PREJUDICE OF JUROR—VOIR DIRE.

In action for damages alleged to have been due to defective stove sold and repairs made by defendants, the mere fact that a juror had also purchased a stove from defendant company and that the stove had proved unsatisfactory did not constitute a sufficient showing on *voir dire* that such juror could not render a fair and impartial verdict so as to warrant his removal for cause.

5. TRIAL—STOVES—USE OF EXHIBITS—PREJUDICE.

No prejudicial error was committed by trial court in action by special administrator against retailer of stove and its repairman by virtue of a subpoena *duces tecum* and order of court at beginning of trial whereby defendants were required to produce a stove, for use during the entire trial, that was similar to the one which had been purchased by plaintiff and his late wife and which was involved in explosion and fire, especially where defendants only claim some benefit arising from fact they should have been permitted to show stove to jury only in their defense after plaintiff had attempted to prove case by oral description without the visual aid.

6. APPEAL AND ERROR—ADMISSION OF EVIDENCE—RES GESTAE.

In action for fatal injuries received by plaintiff's deceased, alleged to have been received because of defective stove which had been purchased from defendant company and repaired by defendant repairman, its employee, admission of testimony of neighbor that deceased had told her a short while before the explosion and fire that she was going to bake a cake, offered as tending to prove deceased was using the stove at the time of the accident and on theory that it was a part of the *res gestae*, was not prejudicial even if not a part of the *res gestae* where other and clearly admissible testimony furnished jury ample basis for finding explosion and fire originated in connection with operation of stove.

7. EVIDENCE—USUAL COURSE OF BUSINESS—HOSPITAL RECORDS.

Under statute relative to admission of records made in the usual course of business, hospital records are admissible but not

such part thereof as do not refer to acts, transactions, occurrences or events incident to treatment (3 Comp. Laws 1929, § 14207, as amended by Act No. 15, Pub. Acts 1935).

8. APPEAL AND ERROR—ADMISSION OF EVIDENCE—HOSPITAL RECORDS.
    Admission of hospital records, showing plaintiff's decedent received her burns as a result of an explosion of a gasoline stove, did not constitute prejudicial error in action for damages against defendants who had sold and later repaired such stove where there was other competent proof from which jury could have found injuries resulted from the operation of the gasoline stove (3 Comp. Laws 1929, § 14207, as amended by Act No. 15, Pub. Acts 1935).

9. NEGLIGENCE—GASOLINE STOVES—REPAIRS. .
    Repairman who undertook to repair a gasoline stove was under an obligation to repair it in a careful and prudent manner.

10. EXPLOSIVES—GASOLINE STOVES—EXPERT TESTIMONY.
    The testimony of an expert witness in action for damages arising from the explosion of a gasoline stove purchased from, and later repaired by, defendants was not rendered incompetent because such witness could not state with positive certainty as to the exact location of the leak causing the explosion.

11. SAME—PROXIMATE CAUSE—EVIDENCE—EXCLUSION OF OTHER POSSIBILITIES.
    Plaintiff, special administrator of his wife's estate, who presented a theory under which jury, if they believed testimony, could have found defendants who had sold a gasoline stove to plaintiff and his wife guilty of negligence resulting in an explosion thereof fatally injuring plaintiff's decedent, would not be required to exclude all other possible causes of explosion in order to recover damages.

12. SAME—PROXIMATE CAUSE—INFERENCES—GASOLINE STOVE.
    In action for damages to plaintiff's decedent received after defendants had repaired gasoline stove previously sold to plaintiff and his wife, record *held,* to contain sufficient evidence from which jury could infer that gasoline stove rather than kerosene heating and cooking apparatus was source of explosion fatally injuring plaintiff's wife. .

13. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—PRESUMPTIONS—EYEWITNESSES—ADMISSIONS.
    Plaintiff, special administrator of his wife's estate, was not deprived of the presumption of due care on part of decedent who was using a gasoline stove theretofore purchased from defendant company and which had been recently repaired by

its employee, defendant repairman, because of the absence of eyewitnesses, merely because of statements she had made immediately after accident to physician who attended her and to her husband at the hospital, where such statements do not constitute an admission or direct evidence of contributory negligence on her part.

14. EXPLOSIVES—EVIDENCE—ADMISSIONS.

In action by special administrator of his wife's estate for fatal injuries received by her from explosion of gasoline stove, purchased from defendant company and repaired by its employee, defendant repairman, jury had a right to disregard statement, signed by plaintiff, that decedent was draining the gasoline from the stove and the fumes were ignited by the kerosene room warmer in the kitchen, resulting in fire but not an explosion, where plaintiff testified that such were not facts known to him but a theory evolved between himself and the company's adjuster.

15. DAMAGES—EXCESSIVE VERDICT.

Judgment for $7,500, entered after plaintiff had remitted the excess thereof from verdict of $15,000 held, not excessive in action for fatal injuries received by plaintiff's decedent who had lived for five or six hours after gasoline stove had exploded.

Appeal from Washtenaw; Sample (George W.), J. Submitted October 14, 1942. (Docket No. 106, Calendar No. 42,179.) Decided November 24, 1942.

Case by William H. Harrison, special administrator of estate of Edith M. Harrison, deceased, against Fred A. Lorenz and another for damages sustained through explosion of gasoline stove. Verdict and judgment for plaintiff. Remittitur filed. Defendants appeal. Affirmed.

*Edward F. Conlin, John W. Conlin* and *Morris E. Popkins,* for plaintiff.

*Hooper & Hooper,* for defendants.

CHANDLER, C. J. This suit was instituted by plaintiff, as special administrator of the estate of his

deceased wife, to recover damages for her death, allegedly caused by the explosion of a gasoline stove purchased from defendant Montgomery Ward & Company, hereinafter referred to as the company, and repaired subsequent to purchase by defendant Lorenz, an employee of said company.

The stove was purchased some time in February, 1938, and operated satisfactorily from that time until the following September when it was noticed that the pilot light burned with a high yellow flame and the stove failed to produce the intense heat that had been previously obtained.

On September 23, 1938, Mrs. Harrison, plaintiff's decedent, wrote the company, complaining about the manner in which the stove operated. On October 4th, the company sent from its Ann Arbor store its repairman, defendant Lorenz, who admittedly made repairs and adjustments to the stove.

Plaintiff testified that on the evening of October 4th, after the visit of defendant Lorenz, the stove did not operate as well as before; that the pilot burner exhibited a high, yellow, smoke-tipped flame; that there was a strong odor of gasoline in the house; that the back burners on the stove refused to light; and that there was a grayish mist or vapor coming from the right rear burner. Plaintiff attempted to light the other burners from the pilot burner two or three times but without success. On the following day, Mrs. Harrison again wrote the company, stating that the repairman came to repair the stove but that it still did not burn properly.

The stove was not used on October 5th or the following morning. On the evening of October 6, 1938, at about 5 o'clock, a neighbor, Mrs. Poole, was passing the Harrison home and deceased said to her that she was going to bake a cake for the Parent-Teachers' meeting to be held that night. Mrs. Poole

replied that it was not necessary as she had everything prepared for the lunch and continued to her home. About five minutes after reaching her home, she heard a disturbance and upon looking out the window she saw the Harrison house in flames.

Joseph Provo, a witness for plaintiff, testified that he was in a real-estate office, located next to the Harrison home, at the time of the fire. He heard someone scream and looking out the window saw Mrs. Harrison on the porch with her clothing afire. He assisted in removing her burning apparel and while so doing, deceased said: "The stove blew up; save the house." Mrs. Harrison was shortly taken to Eloise hospital where she died some five or six hours later.

Defendants' motion for directed verdict was denied. The jury returned a verdict in favor of plaintiff in the sum of $15,000. A motion for judgment *non obstante veredicto* was denied, as was one for a new trial upon plaintiff filing a remittitur in the amount of $7,500. Judgment was then entered for $7,500 and this appeal followed.

Plaintiff was appointed special administrator of the estate of his deceased wife by the probate court for the county of Wayne. The bond filed by him as such fiduciary was approved by the probate court although the surety signing the same did not execute the oath appearing thereon relative to ownership of property equal to the amount of the bond. See Act No. 288, chap. 4, § 5, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 16289–4[5], Stat. Ann. 1942 Cum. Supp. § 27.3178 [255]). Appellants claim that because of this omission, plaintiff failed to qualify and the letters of special administration issued to him are void; hence, they have not been sued by the proper party plaintiff. The above-cited statute does not require the justification of the surety to be in

writing and from the record it cannot be determined whether the oath was administered orally. In any event, the bond was filed and examined and approved by the probate court, and, as we said in *Pungs* v. *Hilgendorf*, 289 Mich. 46, relative to the bond of a testamentary trustee, "The trustee's bond is for the protection of the beneficiaries under the will and they are apparently satisfied." Assuming the oath not to have been taken, the resulting irregularity could not be the basis of a collateral attack on the appointment of the special administrator in this proceeding. See *Cook* v. *Stevenson*, 30 Mich. 242; *Farrand* v. *Caton*, 69 Mich. 235; *Benjamin* v. *Early*, 123 Mich. 93; *Ormsbee* v. *Piper*, 123 Mich. 265.

An order was entered in the probate court authorizing plaintiff to institute the suit and a copy thereof filed in this cause. Defendants' complaint that the order should have been introduced in evidence is without merit and deserves no discussion.

Upon the *voir dire* examination of the jury, juror Dean stated that he had purchased a stove of the defendant company and that the same proved unsatisfactory. Defendants challenged him for cause and the following colloquy thereupon occurred:

"*The Court:* That alone wouldn't—if you will ask him further if he is prejudiced against them.

"*Mr. Hooper:* I think that would make him prejudiced. I don't think he can sit there with an open mind.

"*The Court:* That can be determined by himself. If you want to, use your peremptory challenge. If he has the opinion that notwithstanding what the relationship has been he can render a fair verdict, based on the evidence and the law given by the court, so far as he is concerned he is qualified."

The juror was then excused upon peremptory challenge and defendants claim that the action of the court deprived them of their full number of peremptory challenges as juror Dean should have been removed for cause and all peremptory challenges were exercised.

Nothing appeared upon the *voir dire* examination of the juror that established him to be biased or prejudiced against defendants. The mere fact that he had purchased an unsatisfactory article from the defendant company does not make a sufficient showing that he could not render a fair and impartial verdict so as to warrant his removal for cause. See *Crary* v. *Otis Elevator Co.*, 292 Mich. 349.

By virtue of a subpoena *duces tecum,* and an order of the court made at the beginning of the trial, the company was required to produce a stove for use during the trial, that was similar to the one purchased by Mr. and Mrs. Harrison and involved in the fire. Defendants argue that this was error because such an article is not properly the subject of a subpoena *duces tecum,* and further, that if the stove was to be used as an exhibit for the purposes of demonstration, defendants should have had the opportunity of producing it at the moment of their choice for such purposes and should not have been compelled to furnish the exhibit for the use of plaintiff. Defendants apparently believe that some substantial benefit would have inured to them in the minds of the jury if they had been given the opportunity to show the stove to the jury in their defense after plaintiff had attempted to prove his case by oral description of the same without the aid of a visual demonstration. We have examined this claim and are at a loss to find wherein it can be said that defendants have been prejudiced. If demonstration

of the stove was of benefit to the jury in determining the facts and defendants intended to produce it in any event, it is difficult to see whereby the jury was unfavorably influenced against defendants because they had the opportunity to observe the stove throughout the trial rather than during just a portion of it.

Defendants contend the trial court erred in admitting the testimony of Mrs. Poole as to what was said by deceased about baking a cake. The testimony was offered as tending to prove that the deceased was using the stove at the time of the accident, and was received on the theory that it was a part of the *res gestae*. Assuming the testimony not to have been properly a part of the *res gestae*, defendants were not prejudiced by its admission as the statement of the deceased made immediately after the occurrence, which was clearly admissible, that the stove blew up, together with other evidence contained in the record, furnished ample testimony from which the jury might find that the fire originated in connection with the operation of the stove.

The records of Eloise Hospital admitted in evidence contained a history that deceased had received her burns as a result of an explosion of a gasoline stove. Defendants claim this portion of the record was not admissible under the provisions of 3 Comp. Laws 1929, § 14207, as amended by Act No. 15, Pub. Acts 1935 (Comp. Laws Supp. 1942, § 14207, Stat. Ann. § 27.902). Under this statute, hospital records are admissible. *Gile* v. *Hudnutt*, 279 Mich. 358. However, portions of such records which do not refer to acts, transactions, occurrences or events incident to treatment are inadmissible. *Valenti* v. *Mayer*, 301 Mich. 551. Assuming that this portion of the record should not have been admitted within the purview of the statute, as limited by our prior

decisions, defendants were not prejudiced thereby because of other competent proof from which the jury could have found that the injuries resulted from the operation of the gasoline stove.

Defendants claim that there was no evidence of negligence on the part of defendant Lorenz which was the proximate cause of deceased's injuries, and that deceased was guilty of contributory negligence. As we have stated, it was admitted that defendant Lorenz made repairs on the stove. Having undertaken so to act, it was incumbent upon him to repair the article in a careful and prudent manner. To sustain the burden on this issue, plaintiff produced Dr. Katz, a chemical engineer, as an expert witness. He testified that the presence of the high yellow flame indicated that a defect existed in the stove and that the most likely defect was a leak; that if a leak was present gasoline could have accumulated within the stove, resulting in a mild explosion upon an attempt being made to light the pilot burner. He further testified that he could not say positively that the existing defect was a leak and where such leak occurred although the most probable point of leakage would be in the pack nut located on the front of the generator.

Defendants claim the testimony of Dr. Katz was improperly admitted, arguing that there was no proof that the stove exploded, no positive proof of a leak in the pack nut, and no testimony that anyone was attempting to light the stove at the time of the accident. Dr. Katz, as a qualified expert, was properly permitted to give his opinion as to the nature of the defect and the cause of the explosion. To him, the high yellow flame indicated a leak. If the jury found that a leak existed, they had a right to find defendant Lorenz negligent in not repairing the same. The testimony of this witness was not ren-

dered incompetent because he could not state with positive certainty as to the exact location of the leak. Plaintiff presented a theory under which the jury, if they believed the testimony, could have found defendants guilty of negligence. He was not required to exclude all other possible causes of the explosion. *Curtis* v. *Sears, Roebuck & Co.,* 298 Mich. 539.

The claim that the record contains no evidence that the stove exploded or that anyone was attempting to light the same goes to the question of proximate cause. Immediately after the accident, deceased said: "The stove blew up; save the house." Although not claiming that this statement was not a part of the *res gestae,* defendants say it does not establish that the *gasoline* stove exploded. Other stoves were present in the house, including a kerosene room warmer in the kitchen and a kerosene cooking stove located in a shed adjacent to the kitchen. However, in addition to the *res gestae* statement of Mrs. Harrison, the record contains evidence showing that the kitchen sustained the most damage from the fire and that this room was burned and charred particularly at the place where the gasoline stove was set, and that the stove itself was blackened and twisted out of shape. An examination of the record reveals sufficient evidence from which the jury could have inferred that the gasoline stove was the source of the explosion.

It is claimed that deceased was guilty of contributory negligence, and that plaintiff is deprived of the ordinary presumption of due care in the absence of eye witnesses because she said to the physician who attended her immediately after the accident and before removal to the hospital: "I was foolish in the handling of gasoline," and to her husband at the hospital, "Don't be mad, Bill." These statements

do not constitute, as defendants claim, an admission or direct evidence of contributory negligence on the part of deceased and the presumption that she was in the exercise of due care is still applicable. In connection with this question, defendants stress the importance of a statement signed by plaintiff for defendants' investigator on October 25, 1938, in which he said that the deceased was draining the gasoline from the stove and that the fumes were ignited by the kerosene room warmer in the kitchen, resulting in a fire but not an explosion. Relative to the statement, plaintiff testified that the contents thereof were not facts known to him but a theory evolved between himself and the adjuster during their conversation as to how the accident occurred. In view of plaintiff's explanation of the statement, the jury had a right to disregard the contents thereof in determining the ultimate issue before them for consideration.

After the jury returned a verdict for $15,000, one half thereof was remitted by plaintiff and judgment entered on the balance. Defendants claim the judgment is still excessive. The amount of the judgment is not so great as to shock the judicial conscience and the record reveals no reason why it should be disturbed.

Judgment affirmed, with costs to plaintiff.

BOYLES, NORTH, STARR, WIEST, BUSHNELL, and SHARPE, JJ., concurred. BUTZEL, J., did not sit.