FISHER v HATCHER

OPINION OF THE COURT

1. CONSTITUTIONAL LAW—STATUTES—TRIAL—SIX-MAN JURY.

The statute which provides that in civil cases trial shall be by a jury of six and a verdict shall be received when five jurors agree does not in any way impede justice and is completely constitutional, including the clause which permits a verdict when five members have agreed (MCLA 600.1352).

2. EVIDENCE—HOSPITAL RECORDS—ADMISSIBILITY.

The statute providing for the admissibility of business records into evidence does not authorize the admission of those portions of hospital records which relate to prior statements made to hospital personnel and which do not refer to acts, transactions, occurrences or events incident to treatment (MCLA 600.2146).

CONCURRENCE BY LEVIN, P. J.

3. CONSTITUTIONAL LAW—STATUTE—CIVIL TRIAL—VERDICT OF JURY.

*In a case where the verdict actually rendered against the defendant was unanimous there cannot be a reasonable claim of prejudice by the judge's charge that a verdict could be received when five of the six jurors agreed, even though there are reservations concerning the constitutionality of that portion of the statute providing that a verdict shall be received when five jurors agree.*

Appeal from Wayne, John D. O'Hair, J. Submit-

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 47 Am Jur 2d, Jury §§ 124–135.

Sufficiency of waiver of full jury, 93 ALR2d 410.

[2] 40 Am Jur 2d, Hospitals and Asylums § 43.

Admissibility of hospital record relating to intoxication or sobriety of patient, 38 ALR2d 778.

Admissibility of hospital record relating to physician's opinion as to whether patient is malingering or feigning injury, 55 ALR2d 1032.

ted Division 1 April 5, 1972, at Detroit. (Docket No. 10973.) Decided February 20, 1973.

Complaint by Betty Fisher against Samuel R. Hatcher and Gorman Furniture Company for damages for personal injuries received in an automobile accident. Verdict and judgment for defendants. Plaintiff's motion for a new trial granted. Verdict and judgment for plaintiff. Defendants appeal. Affirmed.

*Lopatin, Miller, Bindes, Tanielian & Freedman, (Michael H. Feiler,* of counsel), for plaintiff.

*Sugar, Schwartz, Silver, Schwartz & Tyler,* for defendants.

Before: Levin, P. J., and Bronson and Van Valkenburg,* JJ.

Van Valkenburg, J. This litigation arises out of an automobile accident. The first trial resulted in a verdict of no cause of action; but subsequent thereto, the plaintiff filed a motion for a new trial on the ground that four jurors had failed to disclose that they or members of their families had at one time been involved in a motor-vehicle collision which resulted in a claim for property damages. The motion was granted, but the defendant did not appeal. Later, a new trial was held, and the jury returned a verdict in favor of the plaintiff in the amount of $20,000. It is from this decision that the defendants appeal.

The defendants raised several issues which will be considered separately. First, they contend that they were entitled to a jury of 12 members. Fur-

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

ther, they argue that if they are not entitled to a 12-man jury, they were entitled to an instruction that the decision of the entire 6 on the panel must be unanimous. Both of these questions were raised below with no success, the jury being a six-man jury and the usual instruction being given that a verdict could be returned when five members thereof had agreed.

A clear understanding of this issue requires acquaintance with certain constitutional and statutory provisions. Const 1963, art 1, § 14 provides:

"The right of trial by jury shall remain, but shall be waived in all civil cases unless demanded by one of the parties in the manner prescribed by law. In all civil cases tried by 12 jurors a verdict shall be received when 10 jurors agree."

At the time this was written the use of 12 jurors in civil cases was almost universal. Obviously the intention of this provision was to make it possible for ten to agree and thereby minimize the number of so-called hung juries.

Const 1963, art 4, § 44 provides:

"The legislature may authorize a trial by a jury of less than 12 jurors in civil cases."

This section is clear and unambiguous. The language indicates that the Legislature may authorize a trial of less than 12, but doesn't designate the number.

Pursuant to the provisions of Const 1963, art 4, § 44, the Legislature originally enacted MCLA 600.1239; MSA 27A.1239, which provided:

"In any civil case in circuit court, trial shall be by a jury of 6 upon the written request of any party and the

written consent of all other parties not later than the time of the pre-trial conference."

This statute was practically useless, largely because of the requirement for consent on both sides. Accordingly, the Legislature took the next step, which was the enactment of MCLA 600.1352; MSA 27A.1352, which provides:

"In civil cases, trial shall be by a jury of 6. A verdict shall be received when 5 jurors agree."

With regard to the question of jury size, the Supreme Court of the United States has spoken on this subject in *Williams v Florida,* 399 US 78, 101; 90 S Ct 1893, 1906; 26 L Ed 2d 446, 460–461 (1970), in the following manner:

"What few experiments have occurred—usually in the civil area—indicate that there is no discernible difference between the results reached by the two different sized juries."

It would be presumptuous indeed for this Court to hold the statute which permits a verdict of five to be unconstitutional, since our Supreme Court has recognized it by rule, GCR 1963, 512.1 as amended, and has authorized standard Jury Instruction No. 1.05 which provides in part:

"When at least five of you agree upon a verdict, it will be received as your verdict."

Accordingly, we hold that MCLA 600.1352; MSA 27A.1352 does not in any way impede justice and is completely constitutional, including the clause which permits a verdict when five members have agreed.

The second, and perhaps most important issue raised by the defendants deals with the denial of

the right to read to the jury certain portions of the hospital records which had been admitted into evidence on the authority of MCLA 600.2146; MSA 27A.2146. The pertinent part of that statute provides:

"Any writing or record whether in the form of an entry in a book or otherwise, made as a memorandum of *any act, transaction, occurrence or event shall be admissible in evidence in all trials, hearings and proceedings in any cause or suit in any court, or before any officer, arbitrators, or referees, in proof of said act, transaction, occurrence or event if it was made in the regular course of any business and it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence or event or within a reasonable time thereafter. All other circumstances of the making of such writing or record including lack of personal knowledge by the entrant or maker, may be shown to affect its weight but not its admissibility.* The term 'business' shall include business, profession, occupation and calling of every kind. The lack of an entry regarding any act, transaction, occurrence or event in any writing or record so proved may be received as evidence that no such act, transaction, occurrence or event did, in fact, take place. Any photostatic or photographic reproduction of any such writing or record shall be admissible in evidence in any such trial, hearing or proceeding by order of the court, made within its discretion, upon motion with notice of not less than 4 days. All circumstances of the making of such photostatic or photographic reproduction may be shown upon such trial, hearing or proceeding to affect the weight but not the admissibility of such evidence." (Emphasis added.)

The records are replete with cases, some of which cannot be reconciled, which attempt to interpret this statute. Generally speaking, it provides that those entries which deal with "transactions, occurrences, or events" may be admitted.

Naturally, the defendants wanted the jury to have the evidence of statements and impressions which were made by plaintiff prior to the accident, while the plaintiff was an outpatient. This situation would appear to be controlled by *Harrison v Lorenz,* 303 Mich 382, 390 (1942):

"However, portions of such records which do not refer to acts, transactions, occurrences or events incident to treatment are inadmissible."

See also, *Valenti v Mayer,* 301 Mich 551 (1942), and *Sadjak v Parker-Wolverine Co,* 281 Mich 84 (1937). But see, *Osberry v Watters,* 7 Mich App 258 (1967), where such records were used for impeachment purposes after plaintiff had denied a prior accident.

Another case which is clearly on point is *Snyder v Oldsmobile Division of General Motors Corp,* 18 Mich App 578, 580 (1969):

"Until the alleged fact that Mrs. Snyder made the statement attributed to her and set forth in the history was proved or brought within an exception dispensing with such proof, such as the business entry statute (MCLA 600.2146; MSA 27A.2146), testimony seeking to prove the contents of her alleged statement was inadmissible. The defendant concedes that the introduction of evidence of Mrs. Snyder's medical history cannot be justified under the business entry statute."

In light of the foregoing authorities, we find that no proof was presented which would indicate the truth or falsity of the statements and impressions which were set forth in the record. All of these were prepared while the plaintiff was an outpatient and had nothing to do with acts, occurrences, transactions, or events incident to her treatment after the accident. The plaintiff was on the stand,

but the attorney for the defendants, perhaps for justifiable reasons, neglected to cross-examine her concerning these statements. Accordingly, the trial court properly denied admission of those portions of the hospital record relating to prior statements made by plaintiff to hospital personnel.

Thirdly, the defendants complain that reversible error was committed by the plaintiff's attorney in his opening and closing statements to the jury. A review of the record discloses that there was more than the usual amount of bickering between the attorneys during this trial. This is not conducive to the dignity of a lawsuit and should not be tolerated. The record clearly shows that the attorney for the defendants opened the door and thereby justified the comments of the plaintiff's attorney. In light of the fact that comments made by plaintiff's counsel were "invited" by defendants' counsel and in light of the fact that the trial court ultimately instructed the jury to disregard the attorneys' interjection of personalities into the issues, we hold that defendants may not argue this question on appeal.

Other alleged errors raised by the defendants have been examined and found to be lacking in merit.

Affirmed. Costs to the plaintiff.

BRONSON, J., concurred.

LEVIN, P. J. *(concurring).*

I

Some of the statements contained in the hospital records which defendants sought unsuccessfully to have admitted into evidence in this case are similar to the statements declared to be admissible in

*Gile v Hudnutt,* 279 Mich 358, 367 (1937).[1] Other statements contained in these records—in contrast with the self-serving statements by a plaintiff's decedent held not to be admissible in *Kelly v Ford Motor Co,* 280 Mich 378, 387 (1937), and *Sadjak v Parker-Wolverine Co,* 281 Mich 84, 87 (1937)—constitute admissions by a party opponent.[2]

Nevertheless, the Michigan Supreme Court and our Court have on so many occasions declared or intimated that a hospital record reflecting "history" or "diagnosis" is not admissible under the business-entry exception to the hearsay rule[3] that I am persuaded that the trial judge probably did not err in refusing to admit these records into evidence.

So that trustworthy evidence of probative value is not denied admission, it would be appropriate to re-examine existing precedent. See McCormick on Evidence (2d ed), § 313, pp 731–732; see, also,

[1] In *Gile* the hospital records held admissible included the "remarks" that the patient was "admitted to the hospital, carried in. Bleeding from mouth, pulse very weak. Color cyanotic." In the instant case the hospital records made over a number of occasions included the following concerning plaintiff Fisher: "broke down in tears", "is quite tense and nervous", "has put on 20 pounds", "tearful and anxious", "depressed and agitated", "tearful as usual".

[2] Both *Kelly* and *Sadjak* were workmen's compensation cases in which the plaintiff offered hospital records containing statements by the deceased workman attributing his injuries to on-the-job accidents. Similarly, see *Case v Vearrindy,* 339 Mich 579, 581–582 (1954). Here the defendant offered records containing statements of the plaintiff to her doctor such as, "She comments on her difficulty in talking to people, including physicians". "She has begun to worry about the possibility of cancer." "She has withdrawn herself from social contact." "She is worried about intermittant headaches, burning sensation in the lower extremities, relieved by aspirin. Examination today is essentially negative." *Cf. Osberry v Watters,* 7 Mich App 258, 262–263 (1967).

[3] *See In re Nickel's Estate,* 321 Mich 519, 523 (1948); *Osberry v Watters, supra,* pp 262–263; *Bryson v Stone,* 33 Mich App 512, 525 (1971); *Bond v Greenwood,* 34 Mich App 41, 43 (1971); *Boudrie v Seven-Up Bottling Co of Detroit,* 40 Mich App 686, 688 (1972); *Cf. Gile v Hudnutt,* 279 Mich 358, 367 (1937); *Harrison v Lorenz,* 303 Mich 382, 390 (1942).

earlier discussion in the first edition of this treatise, § 290, pp 611–612; Jones on Evidence (6th ed), § 12.12, pp 362–364; *Osberry v Watters,* 7 Mich App 258, 263 (1967).

## II

I also have reservations concerning the constitutionality of the second sentence of 1970 PA 118:

"In civil cases, trials shall be by a jury of 6. A verdict shall be received when 5 jurors agree." MCLA 600.1352; MSA 27A.1352.

The provision in our present Constitution permitting the Legislature to "authorize a trial by a jury of less than 12 jurors in civil cases"[4] continues the substance of a like provision found in the Constitutions of 1850 and 1908.[5] Before the adoption of the 1963 Constitution, the Legislature exercised this authority by providing for six-man juries in cases to be tried in municipal courts and justice courts.[6] The requirement that a jury act unanimously[7] was not, however, affected.

It was not until the adoption of the 1963 Constitution that the long-standing "the right of trial by jury shall remain"[8] was modified by providing for

[4] Const 1963, art 4, § 44. As to criminal cases, see the recently adopted amendment to Const 1963, art 1, § 20 permitting a jury to "consist of less than 12 jurors in prosecutions for misdemeanors punishable by imprisonment for not more than 1 year".

[5] *See* Const 1850, art 4, § 46; Const 1908, art 5, § 27.

[6] *See, e.g.,* MCLA 730.23; MSA 27.3773; 1911 PA 299, § 23; MCLA 730.412; MSA 27.3935(12); 1951 PA 179, § 12; MCLA 600.7029; MSA 27A.7029; 1855 PA 173, § 107; MCLA 774.13; MSA 28.1204; R S 1846, ch 94, § 9; 1861 PA 76; 14 Callaghan's Michigan Pleading & Practice, § 124.44, p 590.

[7] *McRae v The Grand Rapids L & D R Co,* 93 Mich 399, 401, 405 (1892).

[8] Const 1908, art 2, § 13; Const 1850, art 6, § 27; Const 1835, art 1, § 9, the latter providing that the right "shall remain inviolate".

less than a unanimous verdict to the following extent: "in all civil cases *tried by 12 jurors* a verdict shall be received when 10 jurors agree". (Emphasis supplied.) Const 1963, art 1, § 14. The address to the people states that this change would permit verdicts in civil actions when *"at least 10 jurors agree".* (Emphasis supplied.)[9]

This constitutional modification of the unanimity requirement is self-executing and does not appear to authorize legislative action.

If this constitutional provision—providing for receipt of a verdict when 10 of 12 jurors agree—also means that a verdict shall be received when 5 of 6 jurors agree,[10] then, instanter, upon the effective date (January 1, 1964) of the 1963 Constitution verdicts should have been received in municipal and justice courts when five of six jurors agreed.[11]

Whatever the meaning of this constitutional provision, the Legislature could not change, enlarge, or modify that meaning.

The Michigan Supreme Court has implemented the second sentence of this legislation by court rule providing that a verdict shall be received in a civil case when five of six jurors agree.[12] Whether the Supreme Court's non-decisional action in pro-

---

[9] *See* 1 MCLA, p 623; 1 MSA, p 359.

[10] Some state constitutions provide for receipt of a verdict when "5/6ths" agree. See discussion, 53 Am Jur, Trial, § 1006, pp 697–699, and pocket part.

*See, generally, The Chicago & M L S R Co v Sanford,* 23 Mich 418, 423–434 (1871), and Annos 43 LRA 3, LRA 1917 A 91, Ann Cas 1916 E 500.

[11] It appears that the first act providing for the receipt of a verdict when 5 of 6 jurors agree was the act establishing the district court. 1968 PA 154, MCLA 600.8353; MSA 27A.8353. Similarly, see 1971 PA 158, MCLA 600.7058; MSA 27A.7058, so providing for municipal courts.

[12] GCR 1963, 512.1 (rendering verdict); GCR 1963, 516.6 (instructions to jury) and SJI, No 1.05.

mulgating a court rule precludes lower courts
from considering on the merits an attack on the
constitutionality of legislation implemented by the
rule need not now be decided.[13] In this case the

---

[13] *Cf. Meek v Centre County Banking Co,* 268 US 426, 434; 45 S Ct
560; 69 L Ed 1028 (1925); *Guastello v Citizens Mutual Insurance Co,*
11 Mich App 120, 134 (1968).

Judge Albert B. Maris, Senior Circuit Judge of the United States
Court of Appeals for the Third Circuit, recently alluded to the
question in testimony prepared for delivery to the House Judiciary
Committee in connection with its consideration of the proposed Fed-
eral Rules of Evidence:

"It has been suggested by some that the rules of evidence go beyond
the rule-making power of the Supreme Court in that they impinge on
substantive rights of litigants in violation of the enabling act, 28
USCS 2072, and therefore, pass beyond the area of procedure. As to
this I can only say that the ad hoc committee which recommended
the project, the advisory committee which prepared the rules and our
standing committee which reviewed them all are fully satisfied that
rules of evidence are, by their nature and operation basically proce-
dural, and, therefore, within the rule-making power of the Court.
Moreover, the advisory committee in drafting the rules and our
standing committee in considering them took great care to make sure
that no provisions which might fairly be characterized as substantive
were included. The distinction between what is substantive and what
is procedural from the Federal rule-making standpoint is, of course,
as the Court pointed out in *Hanna v Plumer,* 380 US 460 [85 S Ct
1136; 14 L Ed 2d 8 (1965)], quite different from that which may be
applicable in other contexts. And we would be the last to claim
infallibility in our application of this distinction. But if any of the
rules of evidence do, in fact, alter substantive rights in violation of
the enabling act the Supreme Court may be relied upon, when the
question is brought before it judicially, so to hold and to strike down
the offending provision. For as Chief Justice Stone said in the opinion
of the Court in *Mississippi Publishing Corp v Murphree,* 326 US 438,
444 [66 S Ct 242, 246; 90 L Ed 185, 191 (1946)], 'The fact that this
Court promulgated the rules as formulated and recommended by the
advisory committee does not foreclose consideration of their validity,
meaning or consistency'. Indeed in the case of *Meek v Centre County
Banking Co,* 268 US 426 [45 S Ct 560; 69 L Ed 1028 (1925)], the Court
did actually strike down as invalid one of the general orders in
bankruptcy which it had promulgated under the rule-making author-
ity granted to it by Section 30 of the Bankruptcy Act in 1898. In my
opinion such action by the Court was wholly proper and I think that
rule making by the Court could not, as a practical matter, function on
any other basis. For if the Court were required to determine in vacuo
by a kind of advisory opinion and without the aid of counsel in the
setting of litigation that every procedural rule which it adopts is valid
from every standpoint, rule making as we know it could hardly
proceed."

verdict actually rendered against the defendants was unanimous, and, therefore, they cannot reasonably claim that they were prejudiced by the judge's charge that a verdict would be received when five of six jurors agreed.