WHITE PINE COPPER COMPANY, a corporation, Plaintiff,

v.

CONTINENTAL INSURANCE COMPANY, a corporation, Defendant.

Civ. A. No. 557.

United States District Court
W. D. Michigan, N. D.

Sept. 18, 1958.

**149**

Donald N. Clausen, Clausen, Hirsh & Miller, Chicago, Ill., McGinn & Fitzharris, Escanaba, Mich., for defendant.

KENT, District Judge.

This matter is before the Court on the defendant's several motions, after a determination by the jury that the defendant is liable to the plaintiff for damages, resulting from an explosion in the plaintiff's smelter furnace, under the provisions of the policy of insurance issued by the defendant to the plaintiff.

Plaintiff is engaged in the business of mining and to some extent refining copper. Plaintiff's smelter furnace is located in Ontonagon County, Michigan, in the Northern Division of this Court. After construction of the smelter, plaintiff was in the process of "slagging in" the furnace, that is, putting a bed of slag on the floor of the furnace as the first step in preparing the furnace for its ultimate use. During the slagging in process the furnace was heated to extreme temperatures and a certain amount of slag was deposited on the floor of the furnace. Much of the slag was in a molten form when a portion of the interior walls collapsed.

The jury was presented with only one issue, and returned with their finding in writing as follows: "We, the jury, find that the damage to the plaintiff's smelter furnace, which occurred on or about December 1, 1954, resulted from an explosion or explosions within the meaning of the term explosion as used in the policy of insurance issued to the plaintiff by the defendant company."

Litigation was commenced in November, 1955, and the trial of the cause was had in the Northern Division of this Court in the Spring of 1957.

During the trial it was plaintiff's theory and claim that the damage to the furnace resulted from an explosion. Plaintiff produced testimony relative to the construction of the furnace, the temperatures obtained during the slagging in process, the steam which emitted from the walls as the heat within the

Thomas L. Marshall, Bell Boyd, Marshall & Lloyd, Chicago, Ill., Eldredge & McDonald, Marquette, Mich., Ropes, Gray, Best, Coolidge & Rugg, Boston, Mass., for plaintiff.

furnace increased, and witnesses who testified that prior to the discovery of the damage within the furnace they heard and/or felt a "thud" from within the furnace.

Plaintiff produced expert witnesses who in response to hypothetical questions testified that in their opinion there was an explosion within the smelter furnace, that the damage to the furnace resulted from such explosion or explosions. It was and is defendant's theory and claim that such testimony on the part of expert witnesses invaded the province of the jury and it was error to permit expert witnesses to testify in regard to any opinion relative to the ultimate question to be resolved by the jury. There can be no question in this case, that issue is squarely before the Court. Since plaintiff's witnesses testified that in the opinion of each of them there was an explosion which caused the damage, and as pointed out previously the only issue submitted to the jury to be answered by written findings was whether the damage to plaintiff's smelter furnace resulted from an explosion or explosions within the meaning of defendant's insurance policies.

It was defendant's theory and claim during the course of the trial that any damage to plaintiff's furnace resulted from faulty construction and the use of materials not suited to use in the inside walls of a smelter furnace at the extreme temperatures contemplated within that furnace. Defendant did not propound to any expert witness produced by the plaintiff any question requesting an opinion relative to the occurrence of an explosion. Defendant's counsel adhered strictly at all times to his basic theory that no expert witness should be permitted to testify to the ultimate question to be resolved by the jury.

The jury was instructed as to the meaning of explosion and sufficiently as to the other matters requiring instruction as to the law, and apparently both counsel were satisfied with the instructions since no objections were made to the instructions as given.

During the course of trial, at the end of plaintiff's proofs, defense counsel made a motion for a directed verdict which was renewed at the conclusion of all the proofs. Motion was denied under the rules.

After considerable deliberation the jury returned with a finding in favor of the plaintiff, as stated above.

Prior to trial both sides used the discovery procedures provided by the Rules of Civil Procedure, in the course of which the defendant company filed motions to require the plaintiff to produce the reports of any and all experts who had examined the furnace after the damage of December, 1954. The defendant, through its counsel, indicated by motions on file in the cause that the defendant was not satisfied that the plaintiff had complied with the orders for production entered by the court. In the course of the discovery procedure and the answers to interrogatories, question was raised by the plaintiff relative to some of the reports constituting the work product of counsel in preparation for the trial of the case. It is interesting to note that plaintiff never produced any reports from any of the experts who were called as witnesses for the plaintiff. The defendant has never raised any objection to this failure on the part of the plaintiff. During the course of the discovery reference was made to an expert whose name was "Steele", and on April 10, 1957, Steele's name and address was given in answer to an interrogatory. Prior to trial there was some discussion relative to Steele, both in the courtroom and in chambers and Mr. Donald Clausen, who was principal counsel for the defendant, stated that he was not asking for work product and in one conference in chambers prior to trial made the following statement in effect: "Tom, (Mr. Thomas Marshall, principal counsel for the plaintiff) if you say it's work product, then that is enough for me."

In the response to the interrogatory, giving the name and address of the expert Steele, in answer to a request for a

copy of the report the answer was, "No answer required."

Plaintiff contends that this was sufficient to place the defendant on notice that a written report had been received and it was then incumbent upon the defendant to take the necessary steps to raise the question of privilege or work product unless the defendant accepted the theory of the plaintiff that the Steele report constituted work product.

It appears that the Steele report was obtained as follows: Plaintiff's Boston counsel asserted by affidavit that they had requested plaintiff's officers who were more familiar with the experts in the field, to secure the names of some experts who might qualify as witnesses and testify in support of plaintiff's theory that the damage in question occurred as a result of an explosion within the furnace. Although it is not clear, it appears that the name of Mr. Eugene W. Steele was given by the insurance broker representing the plaintiff company. Mr. Steele's services were secured by officers of the plaintiff company, after suit had been started. Steele examined the documentary material available in the company's offices in Boston and subsequently traveled to the site of the smelter furnace at Ontonagon with Mr. Thomas Marshall, chief trial counsel for the plaintiff. The report rendered by Mr. Steele was addressed to the plaintiff company rather than to counsel and his bill for services was rendered to the plaintiff company.

It is defendant's theory that these circumstances remove the report from the classification of work product and it is further defendant's position that the orders for production of documents required that the plaintiff produce the Steele report. The Steele report was unfavorable to plaintiff's theory and Mr. Steele was not called as a witness. The record shows that Mr. Marshall or some member of his staff advised defense counsel that Mr. Steele would not be called as a witness. The Steele report includes as facts only the matters which defendant obtained or could have obtained by other methods of discovery. It was primarily a statement of opinion by Mr. Steele as to the cause of the damage to the furnace.

Defendant is now before the Court with a motion for a judgment notwithstanding the verdict for the reasons advanced in the motions made during the course of the trial. In addition, defendant has filed a motion for a new trial on several grounds, and has also filed a supplemental motion for a new trial, and a motion to dismiss the action. The motion for judgment notwithstanding the verdict is on the following grounds:

(1) plaintiff has wholly failed to sustain its burden of proof;

(2) there was no competent, substantial or credible evidence sustaining the verdict in favor of plaintiff;

(3) all of the purported opinion evidence of expert witnesses offered by plaintiff was plainly based on guesswork, speculation and surmise, had no probative effect, did not constitute substantial evidence, and was not sufficient to sustain the verdict for plaintiff;

(4) all of the circumstantial evidence offered by plaintiff, as distinguished from opinion evidence, being just as consistent and reconcilable with defendant's theory of the case as it was with plaintiff's theory, lacked any probative value, and was legally insufficient to sustain plaintiff's burden of proof; such evidence was legally insufficient to make the case submissible to the jury;

(5) plaintiff's evidence, considered most favorably to it, did no more than suggest that explosion was a possible cause of plaintiff's loss and damage, and upon such evidence the jury could not return a verdict in favor of plaintiff without necessarily resorting to speculation, guesswork and conjecture;

(6) the verdict was contrary to the evidence;

(7) the verdict was contrary to the applicable law.

The alternative motion for a new trial was based on the following grounds:

(1) the verdict was not warranted by the evidence;

(2) the verdict was palpably contrary to the manifest weight of the evidence;

(3) there was no competent, substantial or credible evidence supporting the verdict of the jury;

(4) the verdict was contrary to the applicable law;

(5) upon the entire evidence adduced at the trial, the verdict was improper and unjust;

(6) in light of all the evidence, the entry of judgment upon the verdict would be contrary to the ends and interests of justice;

(7) the Court erred as a matter of law, in admitting evidence offered by plaintiff, more particularly as follows: (a) the admission into evidence of opinion testimony of expert, scientific or technical witnesses, testifying on behalf of plaintiff, whereby such expert witnesses expressed their opinion that plaintiff's damage was caused by explosion, amounted to reversible error; in the case here, the ultimate issue to be determined by the jury, namely whether the circumstances causing plaintiff's loss did or did not constitute an explosion, was an ultimate determination to be made by the jury *exclusively* in light of their common experience, and without being influenced by testimony of expert witnesses giving their skilled or technical opinion upon such ultimate conclusion; (b) in a case of this character, opinion testimony coming from expert, scientific or technical witnesses to the effect that plaintiff's loss was caused by explosion, invaded the exclusive province of the jury, and usurped the province of the jury by creating a situation whereby the jury could accept the expert's opinion on the ultimate issue as an improper substitute for the jury's own determination of such ultimate issue.

The supplemental motion for a new trial was filed for the following reasons:

(1) new evidence has been discovered since the trial, and

(2) that the plaintiff is guilty of the violation of discovery orders of this Court made prior to the trial of the case.

And the motion to dismiss was for the reason: that defendant claims that plaintiff completely failed and refused to comply with the pre-trial discovery orders of this Court, and dismissal is demanded under the provisions of Rule 37(b) (2) (iii), 28 U.S.C.A.

For reasons of clarity, we will take these motions separately.

Rule 50 of the Rules of Civil Procedure provides:

"(a) A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict which is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor.

"(b) Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Within 10 days after the reception of a verdict, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict; or if a verdict was not returned such party, within 10 days after the jury has been discharged, may move for judgment in accordance with his motion for a directed verdict. A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned the court may allow the judgment to stand or may reopen the judgment as if the requested verdict had been directed. If no verdict was returned the court may di-

rect the entry of judgment as if the requested verdict had been directed or may order a new trial."

When a motion for judgment notwithstanding the verdict is made together with an alternative motion for a new trial, both motions must be passed upon by the Court. Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 253, 61 S.Ct. 189, 195, 85 L.Ed. 147, wherein the court held:

"If alternative prayers or motions are presented, as here, we hold that the trial judge should rule on the motion for judgment. Whatever his ruling thereon he should also rule on the motion for a new trial, indicating the grounds of his decision."

The law relative to the view to be taken by the court upon a motion for a directed verdict or for judgment after trial has been reviewed in too many courts to require citation of numerous authorities. The Court of Appeals for the Sixth Circuit in Hamilton Foundry & Machine Co. v. International Molders & Foundry Workers Union of North America, 6 Cir., 193 F.2d 209, 213, has said:

"* * * Upon a motion of a defendant for a directed verdict, the trial judge should overrule the motion unless, viewing the evidence in the light most favorable to the plaintiff, there would be no substantial evidence to support a jury verdict if returned for him * * *."

To the same effect is MacKay v. Costigan, 7 Cir., 179 F.2d 125, 127:

"The law is well settled that in passing upon such a motion (for judgment) the trial court must be governed by the same rules which govern it in passing upon a motion for a directed verdict. * * *
"The motions are in effect the same; they present only a question of law as to whether or not, when all of the evidence with reasonable inferences therefrom is considered in its aspect most favorable to the plaintiffs, there is a total failure or lack of

evidence to prove any necessary element of the plaintiff's case."

The Court of Appeals for the Sixth Circuit has well expressed the rule in Patterson v. Pennsylvania R. Co., 6 Cir., 238 F.2d 645, 646, where the court said:

"Our beginning point is the settled rule that, on a defendant's motion for directed verdict or on a motion for defendant notwithstanding the verdict, the facts must be viewed in the light most favorable to the plaintiff and all conflicts in the testimony resolved in the plaintiff's favor."

The only issue to be resolved by the Court in determining defendant's right for a judgment notwithstanding the verdict is whether the evidence produced on the trial, when viewed in the light most favorable to the plaintiff, together with all reasonable inferences to be drawn therefrom, furnishes any substantial evidence to support the jury's verdict in favor of the plaintiff. In determining this issue we must lay aside for the time being the determination of the effect of the testimony of the expert witnesses. In the main the defendant alleges that the plaintiff entirely failed to produce any evidence that the failure of the structure was caused by an explosion. Defendant relies upon the case of Reynolds v. Great American Insurance Co., 334 Mich. 1, 53 N.W.2d 594. In that case the defendant had issued an insurance policy to the plaintiff which included within its coverages damage caused by explosion. While plaintiffs were away from home something happened to the hot water system causing water to spray about in the house damaging the structure and its contents. The plaintiffs were able to show that the bathroom washbowl was loose and ajar and that the faucet had become disconnected from the slip joint in the hot water pipe. The jury held that an explosion had occurred and found for the plaintiffs. On appeal the court held at page 3 of 334 Mich., at page 595 of 53 N.W.2d:

"* * * As such, the verdict rests on sheer conjecture and guess.

"For utter lack of proof of explosion or showing of any facts from which an explosion could reasonably have been inferred, the court should have granted defendant's motions for a directed verdict and judgment non obstante veredicto. * * * ."

A reader must note that there is nothing in the opinion of the appellate court to indicate that there was any expert testimony as to the cause of the failure of the pipe and faucet.

■ Defendant has cited a number of cases dealing with the right of a jury or rather the lack of any right in the jury to speculate or conjecture in reaching a conclusion. See King v. Nicholson Transit Co., 329 Mich. 586, 46 N.W.2d 389; Chaudier v. Stearns & Culver Lumber Co., 206 Mich. 433, 173 N.W. 198, 5 A.L.R. 1673; Riley v. Kohlenberg, 316 Mich. 144, 25 N.W.2d 144, some of which are appeals from the Workmen's Compensation Commission. See also General Motors Corp. v. Wolverine Ins. Co., 6 Cir., 1958, 255 F.2d 8, 9, where the court held:

"Taking the most favorable view of the plaintiffs' evidence, the inference of negligence clearly 'stands equiponderant at best' with the contrary inferences relied upon by the defendant. It was, therefore, the duty of the district court to direct a verdict in favor of the defendant. * * * ."

We must, therefore, determine whether the evidence viewed in a light most favorable to the plaintiff, including all reasonable inferences to be drawn therefrom, can be said to be any better than equiponderant with the inferences claimed by the defendant. Assuming for the moment, that we can accept the testimony of the expert witnesses produced in behalf of the plaintiff, it appears that with the testimony relative to the facts observed, heard and felt, there is testimony from which a jury might reasonably conclude that an explosion occurred.

As was said in Kaminski v. Grand Trunk Western R. Co., 347 Mich. 417, 421, 422, 79 N.W.2d 899, 901:

"Assuredly, judges are mortal men, 'and men are different.' For that standout reason the case at hand must indeed 'be a very clear one which would justify the court in taking upon itself this responsibility' (that of instructed verdict in a negligence case). It is thus right to say that the trial judge's immediate duty, motion for direction having been made with address to the rule of conjectural choice between equally plausible inferences, is to determine on favorable view of the inference plaintiff relies upon whether it stands equiponderant at best with such as is, or are, urged by the defendant. If the answer is affirmative, then and only then will the judge be justified in proceeding as moved.

"Some 30 years ago the supreme court of Alabama adopted a workable test-definition designed toward ascertainment of what is conjectural and what is not in negligence cases. That court recently referred to such definition as having 'been quoted until it has become a classic', City of Bessemer v. Clowdus, 261 Ala. 388, 394, 74 So.2d 259. We quote it as follows from the Bessemer case:

" 'As a theory of causation, a conjecture is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference. There may be two or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without selective application to any one of them, they remain conjectures only. On the other hand, if there is evidence which points to any one theory of causation, indicating a logical sequence of cause and effect, then there is a juridical basis for such a determination, notwithstanding the existence of other plausible theories with or without support in the evidence.'

"Much the same language will be found in Juchert v. California Water

Service Co., 16 Cal.2d 500, 106 P.2d 886, 890, where the question was considered at length. Quoting from an earlier case the court said (16 Cal.2d at page 507, 106 P.2d at page 890):

" 'If, however, plaintiff has proven sufficient facts to justify a verdict upon one theory, the fact that there may be one or more other seemingly rational explanations of the episode in no manner precludes a recovery or invalidates the verdict. These are mere matters of argument to be presented to the jury.' "

And attention is also called to Lever Bros. Co. v. Atlas Assurance Co., 7 Cir., 131 F.2d 770, 775, where the court stated:

"The jury was entitled to consider this expert testimony in connection with all the other evidence in the case. In doing so it had a right to consider the impression the explosion made upon the witnesses who saw, heard and observed it, the physical facts afterwards, and the nature of the damage wrought, together with the reasonable inferences to be drawn from the facts proved. In the light of all this evidence, it was for the jury to see which of the two theories it would adopt. * * *."

And the Court of Appeals in this Circuit has held in General Casualty Co. of America v. Woodby, 238 F.2d 452, 456:

"In our opinion the evidence on this issue was not so conclusive as to justify a directed verdict for the appellants. Where the evidence in relation to the facts is that from which fair-minded men may draw different inferences, the case should go to the jury. It is immaterial that the court might draw a different inference from that drawn by the jury or feel that a conclusion different from that found by the jury is more reasonable."

And that same Court in Lovas v. General Motors Corp., 6 Cir., 212 F.2d 805, 807, held:

"Whether the evidence on behalf of a plaintiff is sufficient to take the case to the jury is a question of law for the trial judge. Where federal jurisdiction is based upon diversity of citizenship, as in the present case, the state law on the question is applicable. * * *.

"Certain principles are well settled under both state and federal law. In every case, before the evidence is left to the jury, there is a preliminary question for the judge whether there is any substantial evidence upon which a jury can properly proceed to find a verdict for the plaintiff, upon whom the burden of proof is imposed. A mere scintilla of evidence, or evidence of no probative value, is not enough to require the submission of an issue to the jury. Where the evidence is conflicting or contradictory, the court does not attempt to judge its weight or to judge the credibility of the witnesses giving such testimony. In considering a motion by the defendant for a directed verdict the Court assumes the truth of the evidence in support of the facts essential to the plaintiff's claim together with all the inferences that justifiably could be drawn therefrom. Where such evidence on an issue is so overwhelmingly against the plaintiff's contention as to leave no room to doubt that a fact is not what the plaintiff claims it to be and such fact is essential to plaintiff's cause of action, the Court is authorized as a matter of law to direct a verdict for the defendant. But where uncertainty as to the facts arises from a conflict in the testimony, or because fair-minded men will honestly draw different conclusions from undisputed facts, the question is not one of law but of fact to be settled by the jury. * * *."

And see Maldonado v. Claud's, Inc., 347 Mich. 395, 79 N.W.2d 847. Probably the matter is best covered in Harrison v. Lorenz, 303 Mich. 382, 6 N.W.2d 554.

In the last case cited the plaintiff attempted to show that an explosion occurred because of defendant's negligence in repairing a gas stove. An expert witness who testified for the plaintiff stated that in his opinion the explosion was caused by a gas leak and although he could not testify with absolute certainty, it was his opinion that the leak probably occurred at a nut the defendant had worked upon. The jury found for the plaintiff on appeal. The court held at pages 391, 392 of 303 Mich., at page 558 of 6 N.W.2d:

"Defendants claim that there was no evidence of negligence on the part of defendant Lorenz which was the proximate cause of deceased's injuries, and that deceased was guilty of contributory negligence. As we have stated, it was admitted that defendant Lorenz made repairs on the stove. Having undertaken so to act, it was incumbent upon him to repair the article in a careful and prudent manner. To sustain the burden on this issue, plaintiff produced Dr. Katz, a chemical engineer, as an expert witness. He testified that the presence of the high yellow flame indicated that a defect existed in the stove and that the most likely defect was a leak; that if a leak was present gasoline could have accumulated within the stove, resulting in a mild explosion upon an attempt being made to light the pilot burner. He further testified that he could not say positively that the existing defect was a leak and where such leak occurred although the most probable point of leakage would be in the pack nut located on the front of the generator.

"Defendants claim the testimony of Dr. Katz was improperly admitted, arguing that there was no proof that the stove exploded, no positive proof of a leak in the pack nut, and no testimony that anyone was attempting to light the stove at the time of the accident. Dr. Katz, as a qualified expert, was properly permitted to give his opinion as to the nature of the defect and the cause of the explosion. To him, the high yellow flame indicated a leak. If the jury found that a leak existed, they had a right to find defendant Lorenz negligent in not repairing the same. The testimony of this witness was not rendered incompetent because he could not state with positive certainty as to the exact location of the leak. Plaintiff presented a theory under which the jury, if they believed the testimony, could have found defendants guilty of negligence. He was not required to exclude all other possible causes of the explosion."

It is interesting to note that the Lorenz case, above quoted, is not as strong as plaintiff's case in the present situation since plaintiff in that instance was required to prove not only that an explosion occurred but that the explosion had been caused by the defendant's negligence. Here the plaintiff must show only that an explosion occurred.

Assuming, the propriety of permitting the testimony of the expert witnesses in the manner in which it was given, this Court is satisfied that there was sufficient evidence, when viewed in the light most favorable to the plaintiff, to permit the jury to reasonably infer that an explosion occurred.

As to defendant's original motion for a new trial, it is controlled by Rule 59(a), Federal Rules of Civil Procedure, which provides in part:

"A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States; * * ."

There is a distinction between the considerations before the Court upon a motion for a new trial and the considerations upon a motion for a judgment n. o. v. As was stated in McCracken v. Richmond, Fredericksburg &

Potomac R. Co., 4 Cir., 240 F.2d 484, 488:

> "There is a difference in the function of the judge when he is ruling on a directed verdict and when he passes on a motion for a new trial. In the former instance it is his duty to accept the plaintiff's version as true for the purpose of the motion, notwithstanding the existence of strong testimony to the contrary; the judge is not concerned with the weight of the evidence. On a motion for a new trial, however, he has wider, though not unlimited latitude, and he may set aside where it is against the weight of the evidence, or to prevent injustice. The two situations should not be confused."

The same rule was laid down by the Supreme Court of the United States in Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251, 61 S.Ct. 189, 194, 85 L.Ed. 147, where the Court held:

> "Each motion, as the rule recognizes, has its own office. The motion for judgment cannot be granted unless, as a matter of law, the opponent of the movant failed to make a case and, therefore, a verdict in movant's favor should have been directed. The motion for a new trial may invoke the discretion of the court in so far as it is bottomed on the claim that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury."

This entire subject has been reviewed by Chief Judge Starr in Miller v. Pacific Mut. Life Ins. Co., D.C., 17 F.R.D. 121, affirmed 6 Cir., 228 F.2d 889, a case in which Judge Starr wrote an exhaustive opinion on the subject of new trials. It cannot be disputed that when the verdict of the jury is against the weight of the evidence, a motion for a new trial will lie and, may in the discretion of the

trial court and probably should be sufficient grounds for the motion's allowance. Since the determination of the motion for a new trial upon this ground, or upon any ground, rests largely within the sound exercise of the court's discretion citation of numerous authorities is of little value because each case, including the present one, must necessarily rest upon its own facts and circumstances. There have, however, been certain guides laid down which the court may use in determining the manner in which its discretion should be exercised. In Tennant v. Peoria & P. U. Railway Co., 321 U.S. 29, 35, 64 S.Ct. 409, 412, 88 L.Ed. 520, Mr. Justice Murphy, speaking for the court said:

> "It is not the function of a court to search the record for conflicting circumstantial evidence in order to take the case away from the jury on a theory that the proof gives equal support to inconsistent and uncertain inferences. The focal point of judicial review is the reasonableness of the particular inference or conclusion drawn by the jury. It is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable. (Citing cases) That conclusion, whether it relates to negligence, causation or any other factual matter, cannot be ignored. Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable."

The above principle was recently followed with approval in City of Knoxville, Tennessee v. Bailey, 6 Cir., 222 F.2d 520, and see the opinion of the trial court in

McHoney v. Marine Navigation Co., D.C. S.C., 137 F.Supp. 263, at page 266, affirmed 4 Cir., 233 F.2d 769, certiorari denied 352 U.S. 930, 77 S.Ct. 231, 1 L.Ed.2d 165, where the trial court held:

"Under our system of jurisprudence, when a jury is impaneled for the trial of a case, it assumes the duty of determining the factual issues and the Trial Judge may not usurp this function after the verdict has been rendered even though he might have arrived at a different conclusion. My present obligation is to consider the evidence adduced at the trial in the light most favorable to the defendant and to decide whether the jury, so viewing the evidence, could reasonably have arrived at the verdict which it did. If there is conflicting evidence upon the issues for determination and if the jury could reasonably have resolved the conflict as it did, there would be no justification for me to set aside the verdict. * * *."

■■ Thus in this motion for a new trial, as in the motion for a judgment n. o. v., the trial court should view the evidence and all the inferences which may reasonably be drawn therefrom in the light most favorable to the party against whom the motion is made. It can be said, however, that upon a motion for a new trial on the ground that there is insufficient evidence, the trial court may in its discretion set aside the verdict even though there may have been sufficient evidence to submit the case to the jury. If the trial court determines that the jury was in error in reaching its verdict, he may in the interests of justice set aside the verdict and grant a new trial. For the reasons heretofore stated in connection with defendant's motion for a judgment n. o. v. this court is satisfied that there was sufficient evidence upon which the jury could reach the verdict in favor of the plaintiff unless the testimony of the experts produced by the plaintiff was improperly received. The record should show that the court is satisfied upon the record as presented to the jury, the verdict returned was well within the limits of reasonable inference based upon the evidence. The court is further satisfied that unless there was error in the admission of evidence, as alleged by the defendant, there is no sufficient ground for setting aside the verdict, and that it should be permitted to stand.

The defendant has also raised the issue, and one of the most important issues now before the court, of the propriety of the admission of expert testimony by plaintiff's witnesses who expressed themselves as being of the opinion that the damage within the plaintiff's smelter furnace was caused by an explosion. It is the contention of the defendant that expert testimony should not be received as to the ultimate fact to be determined by the jury; that the jury must depend upon the evidence as to the facts, viewed in the light of their common experience, and reach a conclusion. It is defendant's theory that admission of expert testimony as to such an ultimate fact, i. e. whether there was an explosion, invaded and usurped the exclusive province of the jury. Rule 61 of the Federal Rules of Civil Procedure provides:

"No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

■ It is clear that a motion for a new trial may properly raise questions of law arising out of alleged substantial errors in the admission of evidence. Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147; General American Life Ins. Co. v. Central National Bank, 6 Cir., 136 F.2d 821.

Thus, there are before the court two questions, first, whether the court erred in admitting the expert testimony, to which proper objection was made, and second, whether the error substantially affected the rights of the defendant.

Taking these in reverse order, it should be stated that the court is satisfied that if there was error in the admission of the testimony then it did substantially affect the rights of the defendant.

■ The general rule as to the admission of expert testimony is as stated in Detroit T. & I. R. Co. v. Banning, 6 Cir., 1949, 173 F.2d 752, 756:

"The general rule permits a witness who is experienced in technical matters and qualified to do so, to give his opinion in a matter which is not one of common knowledge, although it involves an ultimate fact to be finally decided by the jury."

■ The defendant has not seriously questioned the qualifications of the expert witnesses produced by the plaintiff. Defendant has cited several cases, including Mitchell v. Potomac Ins. Co., 183 U.S. 42, 22 S.Ct. 22, 46 L.Ed. 74, which apparently holds that explosion is a word of common meaning and understanding, but does not hold that expert witnesses may not testify as to the existence or non-existence of an explosion under particular circumstances. This court is bound by the opinion of the Court of Appeals of this Circuit in Peoples Gas Co. of Kentucky, Inc., v. Fitzgerald, 6 Cir., 188 F.2d 198, where the question involved was whether an explosion had occurred before or after a certain gas leak. The defendant objected to the admission of opinion testimony by experts as to the cause of the explosion and when it had occurred. On appeal, the Court of Appeals for this Circuit at page 201 stated:

"Finally, appellant urges that there was error in the acceptance in evidence of opinion testimony of expert witnesses as to the actual cause of the explosion. All of the expert witnesses were duly qualified as such to give opinions on the subject, and we find no error made in the court's rulings which permitted each to give his opinion as to the cause of the explosion.

"This court has stated that the general rule permits a witness experienced in technical matters and qualified to do so to give his opinion in a matter which is not one of common knowledge, although it involves an ultimate fact to be finally decided by the jury. * * *."

■ The several Michigan cases cited by the defendant seem to follow the general rule that expert testimony is unadmissible to prove a fact which is in the common knowledge and experience of the jurors. The cases cited by the defendant, decided in the Supreme Court of Michigan, do not deal with the matter with which this Court is concerned. This Court is bound by the opinions of the Court of Appeals of this Circuit unless there is authority to the contrary in the opinions and decisions of the Supreme Court of the state. In the light of the holding of the Supreme Court of Michigan in Harrison v. Lorenz, supra, and of the Court of Appeals of this Circuit in Peoples Gas Company of Kentucky, Inc., v. Fitzgerald, supra, this Court is satisfied that no error was committed in admitting the testimony of the expert witnesses produced by the plaintiff.

For the reasons heretofore stated the court is satisfied that the original motions filed by the defendant, for judgment n. o. v. and for a new trial are without merit and should be denied.

In addition to the motions discussed, defendant has filed supplemental motions for a new trial and a further motion for dismissal. These motions deal with the evidence or possible evidence of one Eugene W. Steele, and the failure of the plaintiff to produce a report received from Steele in compliance with the orders for discovery entered on motion of the defendant.

■ Briefly summarizing what has been previously stated, Eugene W. Steele resides in Florida. Subsequent to the in-

stitution of this suit Steele was engaged by the plaintiff itself on recommendation of its insurance broker for the purpose of rendering an opinion as to the cause of the damage to the plaintiff's smelter furnace. It was more than a year after the damage when plaintiff retained Steele and the first contact with Steele was a substantial period of time after litigation had started. Defendant alleges that the knowledge and information of Steele constitutes new evidence. The right of a party to a new trial on the ground of newly discovered evidence is covered by Rule 59(c) Federal Rules of Civil Procedure which provides:

"When a motion for new trial is based upon affidavits they shall be served with the motion. The opposing party has 10 days after such service within which to serve opposing affidavits, which period may be extended for an additional period not exceeding 20 days either by the court for good cause shown or by the parties by written stipulation. The court may permit reply affidavits."

and Rule 60(b) which provides:

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken."

Attention should be called to the fact that in a hearing before this Court on or about April 10, 1957, approximately two weeks before trial, the name of the witness Steele was revealed, together with his address, and it was obvious to all concerned that he had been consulted as an expert by the plaintiff. It is interesting to note that no request has ever been made nor any argument of failure to comply with the orders of the court asserted because of plaintiff's failure to produce any reports which it may have received from the expert witnesses who were produced on the trial. No reason is given why defendant could not have obtained the testimony of the witness Steele prior to trial. It is stated by affidavit that he was not *interviewed* until after the trial but no reason is given for the delay.

In Grant County Deposit Bank v. Greene, 6 Cir., 200 F.2d 835, 841:

"It is well settled that a new trial will not be granted for newly discovered evidence which, with reasonable diligence, might have been discovered and produced at the trial. * * *

"It should be observed, also, that in Morton Butler Timber Co. v. United States, 6 Cir., 91 F.2d 884, 893, and other cases, we have held that the granting or refusing of a new trial upon the ground of newly discovered evidence of a contradictory and impeaching character rests in the sound discretion of the trial judge, and that such evidence which tends merely to affect the weight and credibility of the evidence does not constitute a proper basis for a new trial. * * *."

As was stated in Kansas City Southern Ry. Co. v. Cagle, 10 Cir., 229 F.2d 12, at page 15, certiorari denied 351 U.S. 908, 76 S.Ct. 697, 100 L.Ed. 1443, the Court held:

" * * * a motion for a new trial on the grounds of newly discovered

evidence must show 'that the evidence was discovered since the trial; must show facts from which the court may infer reasonable diligence on the part of the movant; must show that the evidence is not merely cumulative or impeaching; must show that it is material; and must show that it is of such character that on a new trial such evidence will probably produce a different result.' * * *."

An examination of the Steele report and the affidavit of Steele indicates that Steele had no more information as to the facts than was available to all of the parties long before the trial of this case. The only real value which Steele's evidence would have for the defendant would be to show that plaintiff had consulted with experts who did not support the theory of the plaintiff as such theory was supported by plaintiff's experts who were produced in court. This does not appear to this Court to be an unusual situation. It would be readily understood by lawyers, if not by laymen, that the plaintiff would not produce experts to testify to opinions contrary to the theory of the plaintiff. We find nothing in the Steele report and nothing in the affidavit of Steele which could be defined by the term, "newly discovered evidence."

There remains then only the determination of whether the plaintiff failed to comply with the discovery orders of this Court in such manner that the Court would be justified in granting the defendant relief under Rule 37(b) (2) Federal Rules of Civil Procedure, which provides:

"If any party or an officer or managing agent of a party refuses to obey an order made under subdivision (a) of this rule requiring him to answer designated questions, or an order made under Rule 34 to produce any document or other thing for inspection, copying, or photographing or to permit it to be done, or to permit entry upon land or other property, or an order made under Rule 35 requiring him to submit to a physical or mental examination, the court may make such orders in regard to the refusal as are just, and among others the following:

"(i) An order that the matters regarding which the questions were asked, or the character or description of the thing or land, or the contents of the paper, or the physical or mental condition of the party, or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

"(ii) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing in evidence designated documents or things or items of testimony, or from introducing evidence of physical or mental condition;

"(iii) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

"(iv) In lieu of any of the foregoing orders or in addition thereto, an order directing the arrest of any party or agent of a party for disobeying any of such orders except an order to submit to a physical or mental examination."

Since the decision of the Court of Appeals of this Circuit in Michigan Window Cleaning Co. v. Martino, 6 Cir., 173 F.2d 466, there can be no question, under Rule 37(b) (2), as to the extent of the power of a trial court if there has been a failure to comply with discovery orders properly entered. However, from that opinion it appears that the determination of such motion rests largely within the sound discretion of the trial court. Defendant relies heavily upon the decision of the Court of Appeals for the Sixth Circuit in Sachs v. Alumi-

num Company of America, 6 Cir., 167 F. 2d 570. This was an appeal from a trial court determining that the witness Sachs was in contempt of the trial court for his failure to answer certain questions propounded upon the taking of a deposition. Sachs had been engaged by counsel for the Cold Metal Process Company to make certain tests and x-ray photographs of samples furnished to him in connection with a patent case. The judgment of contempt was sustained on appeal. However, it appears that the trial court and the Court of Appeals were firmly of the opinion that the questions propounded were an effort to solicit knowledge of *facts* within the knowledge of the witness, obtained by tests. It does not appear from that decision that the questions were an effort to secure the opinions of an expert witness consulted by a party.

It is plaintiff's theory, first, that the report of Steele constituted work product within the meaning of Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451, and the decisions by other courts subsequent to that decision of the Supreme Court of the United States.

For the reasons heretofore stated it appears that the defendant was perfectly willing to accept the statement of plaintiff's counsel that the Steele report was work product. This Court is of the opinion that defendant had sufficient knowledge of the existence or probable existence of the report of Steele to enable the defendant to raise the question of the propriety of the withholding of the report prior to trial. The record will demonstrate that this Court was available to counsel for a determination of this issue prior to trial, if the issue had been presented. Regardless of that fact, this Court is in no position, based upon this record, to reach any conclusion that the failure of plaintiff's counsel to produce the Steele report was a deliberate refusal to comply with the orders of the Court. There is nothing in this record and there was nothing outside the record at any time which indicated to this Court, or which indicates to this Court now,

that plaintiff's counsel was making any effort to conceal any information which plaintiff's counsel considered as properly a subject for discovery. The mere fact that plaintiff's counsel may have been mistaken, if he was, in considering the Steele report as work product, would not appear to this Court to be sufficient cause to justify invoking the provisions of Rule 37(b) (2), Federal Rules of Civil Procedure.

Further for the reasons previously stated this court does not deem the Steele report or any possible testimony on the part of Steele to be *"sufficient evidence"* to make a different result probable if a new trial were granted. Certainly the actions of plaintiff's counsel and the plaintiff would not justify a dismissal of the case as prayed by the defendant.

In summary it may be stated that the Court is satisfied:

(1) that the evidence produced on the trial of this cause raised issues of fact for determination by the jury;

(2) that the verdict of the jury was not contrary to the clear weight of the evidence;

(3) that the admission of the testimony of experts, giving opinions as to whether an explosion occurred, was not error;

(4) that the defendant accepted the plaintiff's theory that the Steele report was work product and did not avail itself of the procedures provided by the Federal Rules of Civil Procedure for a determination of that issue;

(5) that the Steele report contains opinion and no new material facts;

(6) that any testimony which Steele could give as set forth in the report rendered, would be only cumulative for the defense;

(7) that the new evidence, if any, in the Steele report could have been secured by the defendant before trial;

(8) that the testimony of the witness Steele would not change the outcome of the lawsuit unless the jury was swayed by the fact that Steele was employed by

the plaintiff and gave a report adverse to the theories of the plaintiff;

(9) that plaintiff's counsel acted in a completely honest and honorable manner in failing to produce the Steele report, though counsel may have been mistaken in believing that such report constituted "work product";

(10) that the Steele report is "work product" of counsel as that term is used in the decisions;

(11) the Court is not satisfied that a new trial would result in anything other than relitigation of the same issues with the same testimony;

(12) the Court is not satisfied that a new trial would bring forth a different result;

(13) the Court is satisfied that there is no reason for granting a new trial and that no reason has been shown which would in any sense justify a dismissal of the plaintiff's action.

An order may be entered denying defendant's motion for judgment notwithstanding the verdict; denying defendant's motion for a new trial, and denying defendant's motion to dismiss the plaintiff's action.