MARTIN v. HESS CARTAGE COMPANY

1. DISCOVERY—INTERROGATORIES—FAILURE TO REPLY—DISMISSAL.

An action should not be dismissed because a party's response to an interrogatory failed to comply with a court order compelling an answer to the interrogatory where it has been established that the party's failure to comply was due to inability, and not to wilfulness, bad faith, or any fault on his part (GCR 1963, 313.2[2][c]).

2. DISCOVERY—INTERROGATORIES—ANSWER TO INTERROGATORY—SUFFICIENCY OF ANSWER—COURT ORDER.

Court order compelling plaintiff to comply with defendant's request that plaintiff furnish a detailed and accurate report, stated in dollars, concerning the physical damage done to plaintiff's vehicle, was unclear as to whether a report submitted by the plaintiff could constitute compliance with the order or whether nothing other than a report prepared by an independent, disinterested person, such as a garage or repair shop, could constitute compliance.

3. DISCOVERY—INTERROGATORIES—ANSWER TO INTERROGATORY—SUFFICIENCY OF ANSWER—DISMISSAL.

Dismissal of complaint with prejudice on the ground that plaintiff had failed to comply with a court order that plaintiff supply defendant with a detailed and accurate report, stated in dollars, concerning the physical damage done to plaintiff's vehicle was error where plaintiff furnished defendant with his own affidavit detailing damages, the dismissal was based on the ground that only a garage repair bill or a garage report would have constituted compliance, and the trial court's construction of its order had never been communicated to plaintiff or his lawyer.

REFERENCES FOR POINTS IN HEADNOTES
[1, 3]  23 Am Jur 2d, Depositions and Discovery §§ 258, 259.
[2]  23 Am Jur 2d, Depositions and Discovery §§ 256, 257.

Appeal from Wayne, John M. Wise, J. Submitted Division 1 June 10, 1971, at Detroit. (Docket No. 9544.) Decided October 1, 1971.

Complaint by John H. Martin and Nellie Martin against Hess Cartage Company for negligence. Complaint dismissed with prejudice. Plaintiffs appeal. Reversed and remanded for trial.

*Zeff & Zeff, P. C.,* for plaintiffs.

*Garan, Lucow, Miller & Lehman* (by *David J. Cooper*), for defendant.

Before: LEVIN, P. J., and QUINN and V. J. BRENNAN, JJ.

LEVIN, P. J. This action was dismissed with prejudice upon a finding by the trial court that the plaintiffs had not responded to an interrogatory in accordance with an earlier order of the court. We reverse and remand for trial because the earlier order requiring the response to the interrogatory did not provide that the information sought could be furnished *only* in the manner that the court, at the time of dismissal, found was required, and the record does not show that the construction placed by the court on its earlier order was communicated by the court to the plaintiffs or their lawyer before the action was dismissed.

I.

The plaintiffs, John H. Martin, and his wife, Nellie, commenced this action against the defendants, Hess Cartage Company and Charles Owens. Owens was the employee-operator of a truck owned

by Hess Cartage. The action was later dismissed as to Owens.

On November 23, 1962, plaintiff John Martin drove his automobile into a light pole. Owens, who was driving a Hess Cartage truck, stopped to give assistance and drove Martin to Hess Cartage's nearby place of business.

Upon arriving, Martin alighted. He claims that before he could do so safely, Owens negligently resumed forward progress causing him to lose his balance and fall to the ground and suffer injury. Hess Cartage denies that Owens was negligent and alleges that Martin was intoxicated and fell out of the stopped truck while attempting to alight.

Pertinent to the issue on appeal, Hess Cartage further contends that Martin suffered whatever injuries occurred when his automobile struck the light pole, not when he alighted. In an effort to substantiate that contention, it sought discovery concerning the extent of the damages to his automobile.

## II.

Plaintiff's complaint was filed on November 22, 1965. On February 18, 1966, Hess Cartage submitted interrogatories, including the following:

"25. Please itemize all repairs made to plaintiff's automobile following the accident involved in the instant case.

"26. Does plaintiff have a copy of the repair invoice or repair statement for this automobile? If so, give the name and address of the person or persons who have custody thereof. Will you furnish a copy of that repair invoice or statement to the defendant? If so, please attach copy."

On May 2, 1966, Hess Cartage moved to dismiss plaintiffs' action because they had failed to respond to the interrogatories. On May 25, 1966, they responded to the interrogatories, and to interrogatories 25 and 26 as follows:

"25. $100.00 deductible collision policy
"26. No."

On August 5, 1966, an Order Compelling Answers to Interrogatories was entered. Four items of information were required to be supplied. Three were supplied. The dispute concerns item 3, *viz.*:

"3. Plaintiff shall supply to the defendant a detailed and accurate report, stated in dollars and cents, concerning the amount of physical damage done to the plaintiff's vehicle in the accident in question."

On November 13, 1967, the action was dismissed for "want of prosecution, but without prejudice". It was reinstated by order dated December 1, 1967.

On May 8, 1968, the circuit judge filed an opinion stating that the Order Compelling Answers to Interrogatories had not been complied with and that the plaintiffs would be allowed 20 days within which to comply; pursuant to the opinion an order was entered on May 17, 1968, providing that if the plaintiffs failed to comply with the Order Compelling Answers to Interrogatories the action would "stand dismissed with prejudice, without need for the defendant to take any further action". On June 5, 1968, *within the 20-day period,* the plaintiffs filed the following response in the form of an affidavit signed by plaintiff John Martin:

"3. Amount of damage $300.00 said damage being in the nature of the following repairs, to-wit:

"Replace right front fender and bumper
"Replace headlight
"Bump out hood
"Realign and bump out right front door
"Replace righthand side of front grill."

One year and eight months later, a pretrial conference was scheduled for February 27, 1970. Hess Cartage submitted a pretrial statement asserting that paragraph 3 of the Order Compelling Answers to Interrogatories required the plaintiffs to furnish "a copy of the property damage repair report", that they had not done so, and under the order of May 17, 1968 the action was dismissed and there was no reason to have a pretrial conference.

The parties appeared before the circuit judge on April 24, 1970. At the conclusion of oral argument he ruled that the action was dismissed because of noncompliance with the May 17, 1968 order requiring a response within 20 days to the order Compelling Answers to Interrogatories. On May 1, 1970, an order was entered dismissing the action with prejudice.

## III.

The defendant did not advance its claim that the plaintiffs' June 5, 1968 response did not comply with the court's orders until the pretrial conference on February 27, 1970, over 20 months after the plaintiffs' response was received. True, the May 17, 1968 order provided that if the plaintiffs did not comply within the 20-day period the complaint was to be deemed automatically dismissed. Nevertheless, the defendant's lawyer should not have been surprised when the plaintiffs' lawyer contended that the June 5, 1968 response complied with the court's directives. When the plaintiffs responded by affidavit on June 5, 1968, to interrogatory No. 3, it must

have been apparent to the defendant's lawyer that the plaintiffs and their lawyer thought or would contend that by filing the affidavit in the form it was filed that they had complied with the court's orders. The delay in bringing the matter to a head from June, 1968 to April, 1970 cannot be charged to the plaintiffs.

The plaintiffs' lawyer did, indeed, delay in responding to the interrogatories. First, there was the delay from February 18, 1966, when the defendant's interrogatories were filed, until May 25, 1966, when the plaintiffs filed their response. Then there was the delay from August 5, 1966, when the Order Compelling Answers to Interrogatories was entered, until June 5, 1968, when the response to item 3 in the form of an affidavit signed by one of the plaintiffs was filed—a delay of almost two years.

The correspondence in the interim between the lawyers for the parties, referred to during oral argument and which is not part of the record on appeal, indicates that the lawyers for the parties were in communication, but does not justify this extraordinarily long delay. However, the court did not dismiss the plaintiffs' complaint in May, 1968 because they had not by then responded to the August 5, 1966 Order Compelling Answers to Interrogatories. In May, 1968, the court gave the plaintiffs 20 days within which to cure the defect. Within the 20-day period the plaintiffs made a response.

## IV.

The question then becomes whether the court acted properly in concluding on April 24, 1970, that the June 5, 1968 response was so inadequate as to justify the drastic remedy of dismissal of plaintiffs' complaint.

In *Krim* v. *Osborne* (1969), 20 Mich App 237, we affirmed an order dismissing a complaint pursuant to GCR 1963, 313.4[1] for failure to answer interrogatories. We observe that the court rule is based on F R Civ P 37(d) and declared, citing decisions of Federal courts as authority:

"Dismissals of causes of action under this rule are within the discretionary power of the trial judge (*Halverson* v. *Campbell Soup Company* [CA 7, 1967], 374 F2d 810; *White Pine Copper Company* v. *Continental Ins. Company* [WD, Mich, 1968], 166 F Supp 148; *Dann* v. *Compagnie Generale Trans-Atlantique Limited* [ED NY, 1939], 29 F Supp 330), but because of the drastic nature of such action, the rule should be applied only in extreme circumstances. *Independent Productions Corporation* v. *Loew's Incorporated* (CA 2, 1960), 283 F2d 730."[2]

The defendant in this case relies on GCR 1963, 313.2(2)(c)[3] as the source of the court's power to

---

[1] ".4 Failure of a party to Attend or Serve Answers. If a party or officer or managing agent of a party willfully fails to appeal before the person who is to take his deposition, after being served with a proper notice or fails to serve answers to interrogatories submitted under Rule 309, after proper notice of such interrogatories, the court on motion and notice may strike out all or any part of any pleading of that party, or dismiss the action or proceeding or any part thereof, or enter a judgment by default against that party." GCR 1963, 313.4.

[2] See also *Robison* v. *Transamerica Insurance Co.* (CA10, 1966), 368 F2d 37; *Bon Air Hotel, Inc.* v. *Time, Inc.* (CA5, 1967) 376 F2d 118; *Maresco* v. *Lambert* (ED NY, 1941), 2 FRD 163.

[3] "(2) Other consequences. If any party or an officer or managing agent of a party refuses to obey an order made under sub rule 313.1 requiring him to answer designated questions, or an order made under either rule 310 or 311, the court may make such orders in regard to the refusal as are just, and among others the following:  *  *  *

"(c) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;" GCR 1963, 313.2(2)(c).

Our disposition of this case makes it unnecessary for us to discuss the interplay of rules 313.2(2)(c) and 313.4. See generally, 4 Moore's Federal Practice ¶¶ 37.03[2], 37.05.

dismiss a case where the party from whom discovery is sought has responded but the response does not comply with a court order requiring an answer. This rule is also derived from a Federal rule, F R Civ P 37(b). The United States Supreme Court construed that rule in *Societe Internationale Pour Participations Industrielles et Commerciales, S.A.* v. *Rogers* (1958), 357 US 197, 212 (78 S Ct 1087, 1096; 2 L Ed 2d 1255, 1267) and declared that an action should not be dismissed "when it has been established that failure to comply has been due to inability, and not to willfulness, bad faith, or any fault of petitioner".

In this connection it has been said that the "courts should make the punishment fit the crime and should not impose a drastic sanction, which will prevent adjudication of a case on its merits, except on the clearest showing that such a course is required".[4] In this case a less drastic sanction would have been to enter an order that "designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order". GCR 1963, 313.2(2)(a). The question of the propriety of the sanction imposed, need not, however, be reached to decide this case.

## V.

An antecedent and the primary question is whether the plaintiffs were under a duty to furnish more than was contained in their June 5, 1968 response. That in turn requires an interpretation of the court's August 5, 1966 Order Compelling Answers to Interrogatories.

[4] 2A Barron and Holtzoff, Federal Practice and Procedure § 853, pp 544, 545, quoted approvingly *Oaks* v. *Rojcewicz* (Alaska, 1966), 409 P2d 839, 844.

The defendant contends, and the trial judge by implication found, that no response prepared by the plaintiffs themselves could constitute compliance with the court's orders, that the plaintiffs could comply only by furnishing a document prepared by an independent, disinterested person, *e.g.,* a copy of the repair bill or a report furnished by the garage.

The August 5, 1966 Order Compelling Answers to Interrogatories provides that the plaintiffs shall supply the defendant with "a detailed and accurate report, stated in dollars and cents, concerning the amount of physical damage done to the plaintiff's vehicle in the accident in question". In our opinion, it is not clear whether a "report" prepared by the plaintiffs could constitute compliance with the order or whether nothing other than a report prepared by an independent, disinterested person could constitute compliance.

It does not appear that a record was made of any hearing preceding the entry of the August 5, 1966 or May 17, 1968 orders, and, thus, we cannot construe the language of the orders in the light of what took place at hearings preceding the entry of those orders. The orders appear to have been prepared by defendant's lawyer.

Neither the opinion filed by the circuit judge on May 8, 1968, nor the order entered pursuant to that opinion on May 17, 1968, focuses on the interpretive problem with which we are faced. Nor does the transcript of the April 24, 1970 argument indicate that the court, either in August, 1966 or May 1968, had communicated to the plaintiffs' lawyer that they must furnish a report prepared by an independent, disinterested person or that a response by the plaintiffs themselves furnishing the requested information could not constitute compliance. Nor did the circuit judge find on April 24, 1970, expressly

or by implication, that the construction he then placed on his earlier orders had been communicated to the plaintiffs or their lawyer before that date.

At one point during the April 24, 1970 argument, the judge said, "Now, where was the bill or copy of the bill of the damages which was the itemization which was required by" the August 5, 1966 order. At other times, the judge spoke of a garage report, or both of a repair bill and a garage report. A repair bill would have been prepared contemporaneously with the making of the repairs. A garage report might be prepared months or years later.

It will be recalled that the plaintiffs responded in the negative to the initial interrogatory whether they had and would furnish a copy of the repair invoice or repair statement for the repairs to plaintiff John Martin's automobile. On several occasions during the April 24, 1970 argument, plaintiffs' lawyer asserted that they did not have a repair bill. He said: "In 1966 and 1968, 1965 this man [plaintiff John Martin] could not get to [defendant's lawyer] a copy of the repair bill, did not have it".

In response to the statement by the judge that the purpose of discovery is to "open the files", the plaintiff's lawyer responded, "what happens if he cannot find the repair bill?" The judge replied, *"that wasn't before me"* (emphasis supplied). The colloquy between the court and counsel concluded with the following exchange:

*"The Court:* Now I'm going to put on the record that the court was a specialist in the negligence field before getting on the trial level and the court would like the record to indicate that there is a good deal of information from a garage report or a detailed accurate report of the damages of a vehicle. Counsel for plaintiff in this cause has a tendency

in any number of cases to fail to comply with orders of the court, which has been an every day, every week occurrence.

"*Mr. Zeff* [*plaintiff's lawyer*]: This I also object to as a matter of record because what has transpired—

"*The Court* (*interposing*): Just a moment. Put this on the record. There isn't a judge on this bench who does not know the situation—

"*Mr. Zeff* (*interposing*): I will object to this also.

"*The Court*: May I say this to you, Mr. Zeff. I have been ultra-liberal, giving you everything you wanted in spite of [defendant's lawyer's] objections back in 1968.

"*Mr. Zeff*: In 1968 I told you I couldn't get a repair bill. What could I do? When a person can't find a repair bill is the person's cause going to be dismissed?

"*The Court*: Dismissed because of the negligence or manner in which you were proceeding. That is the reason."

While plaintiffs might have responded to the court's orders by furnishing a copy of a repair bill and the plaintiffs' lawyer may have understood that the defendant or the court expected the plaintiffs to furnish a copy of the repair bill, it is far from clear from the language of the August 5, 1966 order (or the later May 17, 1968 order) that the *only* manner in which the plaintiff could comply would be to furnish a copy of the repair bill, particularly if the plaintiffs' lawyer did, as he asserted on April 24, 1970, advise the court in May, 1968 that (as earlier stated in response to an initial interrogatory) the plaintiffs did not have a copy of the repair bill.[5]

---

[5] Plaintiffs' lawyer kept insisting at the April 24, 1970 hearing that his clients did not have a copy of the repair bill. There is nothing in the record which would indicate that plaintiffs' lawyer's statement not truthful.

If the plaintiffs could only comply by furnishing a copy of the repair bill itself, then there was no need to say more than just that in the August 5, 1966 order; there was no need for a particularization in that order of what the "report" was to contain.

Nor do we think it is clear from the order that a "report" by the plaintiffs would not suffice, that the report had to come from the garage where the repairs were made.

While the judge said on April 24, 1970, that he could understand why the defendant's lawyer would want "the repair bill because a lot of information is obtained from that", and "there is a good deal of information from a garage report or a detailed and accurate report to the damages of the vehicle", and he found that plaintiffs' lawyer had not "supplied the defendant with a detailed and accurate report as to the physical damage done to the vehicle", he earlier said that plaintiffs' lawyer was right in saying there had been substantial compliance with the August 5, 1966 order: *"there is a substantial compliance with number three. You are right"* (emphasis supplied), that the question of what happens if plaintiffs can't find the repair bill "wasn't before me", and that he was dismissing the action because of the "negligence or manner" in which the plaintiffs' lawyer was proceeding.

---

There is nothing in the record showing that the repair bill or a garage report, if it ever was available, is not now available.

If the April 24, 1970 argument had focused on the question whether a repair bill or garage report was obtainable, it might have then or on an adjourned date have been established whether a garage bill or report is presently obtainable etither from the garage or some employee of the garage or from plaintiff John Martin's insurer. It might even appear upon examination of such a bill or report, if obtainable, that the damages were no different than the damages stated in the affidavit furnished by the plaintiffs on June 5, 1968.

We could not properly say on this record that it was ever made clear to plaintiffs' lawyer in May, 1968 or in August, 1966, that if the plaintiffs did not have a copy of the repair bill that an answer by one of them detailing the damages would not suffice and that they were under an obligation to obtain from the garage either a duplicate of the repair bill or a written report as to the nature and amount of the damages. There being no evidence to show that the construction placed on the 1966 and 1968 orders at the April 24, 1970 argument was communicated to plaintiffs' lawyer before April 24, 1970, plaintiffs' action could not properly be dismissed for noncompliance with the court's orders.[6]

Reversed and remanded for trial. Costs to the plaintiffs.

All concurred.

---

[6] On May 25, 1966, in response to Hess Cartage's interrogatories, the plaintiffs responded that they did not have and would not furnish a copy of the repair bill. If it was of such transcendent importance to Hess Cartage to obtain a copy of the repair bill or a report from the garage, its lawyer could have asked, upon oral examination of the plaintiffs or by written interrogatories, for the names of the garage and of plaintiff John Martin's insurer. With the response Hess Cartage's lawyer might have determined whether a copy of the repair bill or a report itemizing the damages could be obtained from the garage or the insurer.

While the court could require the plaintiffs to furnish information in their possession and to respond to interrogatories, it is a separate question whether it could require them to attempt to obtain from a third person information in that person's files or to seek to have a third person prepare a report to be furnished to the defendant, at least without any showing on the part of the defendant that it was unable to obtain the information from the third person and there was reason to believe that the plaintiffs could. We intimate no opinion on that question because it has not been briefed or argued. We advert to it because we do not wish to be understood as declaring by implication that an order requiring a party to obtain information from a third party can be entered as a matter of course. See *Societe Internationale Pour Participations Industrielles et Commerciales, S. A.* v. *Rogers* (1958), 357 US 197, 204 (78 S Ct 1087, 1091; 2 L Ed 2d 1255, 1262).