BRYSON *v.* STONE

1. NEGLIGENCE—MALPRACTICE—PLEADING—SUFFICIENCY.

Plaintiff's complaint which alleged that plaintiff went to defendant hospital for treatment of his injured right foot and ankle, that tests, unnecessary for the treatment of his injury, were performed upon him, that unnecessary surgery, cervical sympathectomy, was performed on both sides of plaintiff's neck during two subsequent hospitalizations, that plaintiff was not informed of the proposed surgery or its purpose, that plaintiff did not consent to the surgery, and that the surgery was unwarranted and was a departure from the standard of practice of the community and similar communities, was sufficient to allege a malpractice cause of action, because plaintiff's cause was not based on negligently-performed surgery, but on the ground that any surgery was unnecessary.

2. NEGLIGENCE — MALPRACTICE — PLEADINGS — EVIDENCE — VARIANCE — AMENDMENT.

Failure to grant a mistrial because of a variance between the allegations in plaintiff's complaint that unnecessary cervical sympathectomies were performed upon him and the proofs at trial showing that the surgeries were a scalene node biopsy and carotid body excision, was not error even though plaintiff had been informed before trial that he had the wrong name for the operation and even though plaintiff made no attempt to amend his complaint where the theory of recovery was that any surgery performed was unnecessary and was without the plaintiff's informed consent, because under the theory of re-

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 41 Am Jur, Physicians and Surgeons §§ 73–138.
[3] 1 Am Jur 2d, Abatement, Survival, and Revival § 98.
[4, 5] 41 Am Jur, Physicians and Surgeons §§ 122, 123.
[6] 56 Am Jur, Venue § 56.
[7] 41 Am Jur, Physicians and Surgeons § 83.
[8, 9] 58 Am Jur, Witnesses § 214.
[10–12] 40 Am Jur 2d, Hospitals and Asylums § 43.

covery, the name of the unnecessary surgery was mere surplusage and a mistake in its name did not prejudice the defendants.

3. PARTIES—DEATH BEFORE TRIAL—SURVIVAL OF ACTIONS—STATUTES.
Malpractice action against defendant doctor, who was also a defendant in his capacity as a co-owner of defendant's hospital, was not abated by his death before trial and the judgment rendered against the doctor and his wife, as co-owner of defendant hospital, was not invalid even though no estate had been established and no representative of the estate had been substituted for the deceased doctor at the time of trial, because, by statute, all actions and claims against a defendant survive his death (MCLA § 600.2921).

4. NEGLIGENCE—MALPRACTICE—LIMITATION OF ACTION—ACCRUAL OF ACTION.
A claim based on medical malpractice accrues at the time that the defendant treating or otherwise serving the plaintiff discontinues treating him as to matters out of which the claimed malpractice arose (MCLA § 600.5838).

5. NEGLIGENCE—MALPRACTICE—LIMITATION OF ACTION—ACCRUAL OF ACTION.
Statute of limitations did not bar that part of plaintiff's malpractice claim which accrued more than two years before February 23, 1966, the date his action was commenced, where the evidenc showed that plaintiff was hospitalized in the fall of 1965, that tests were performed on him then, and that the defendants continued to treat plaintiff relative to that hospitalization after February 23, 1966 (MCLA § 600.5838).

6. VENUE—CHANGE OF VENUE—ADVERSE PUBLICITY—DISCRETION.
Denying a motion for change of venue, made because of adverse publicity concerning criminal and other charges made against various doctors, as well as certain other personnel of defendant hospital was not an abuse of discretion where the publicity occurred three years before the trial of plaintiff's malpractice action against the hospital, its agents, and employees and where the trial judge thought that an effort should be made to select a jury that could render a fair and impartial verdict before granting a change of venue.

7. NEGLIGENCE—MALPRACTICE—EVIDENCE—NONLICENSED PHYSICIAN —ADMISSIBILITY.
Evidence that one of the defendants, a doctor, employed by

defendant hospital, was not licensed to practice in Michigan was properly admitted into a trial for malpractice.

8. EVIDENCE — ADMISSIBILITY — CORROBORATING EVIDENCE — DEAD MAN'S STATUTE.

A party's testimony about conversation with a deceased opposing party in order to be admissible need be supported only by some other material evidence tending to corroborate the witness's claim (MCLA § 600.2166).

9. EVIDENCE — ADMISSIBILITY — CORROBORATING EVIDENCE — DEAD MAN'S STATUTE.

Plaintiff's testimony regarding conversations with a deceased defendant was not barred from admission where parts of plaintiff's testimony were corroborated by admissible hospital records and by the testimony of another witness regarding the records (MCLA § 600.2166).

10. EVIDENCE — HOSPITAL RECORDS — ADMISSIBILITY — BUSINESS ENTRIES STATUTE.

Hospital records are admissible under the business entries statute to show recorded events and acts (MCLA § 600.2146).

11. EVIDENCE—HOSPITAL RECORDS—ADMISSIBILITY.

Admitting hospital records into plaintiff's malpractice action was not error even though defendants claimed that there were entries by persons not shown to be agents or employees of the defendants where the trial judge, although at first admitting the entire record, later limited his decision so as to allow plaintiff's medical witness and a defendant doctor to make references to the record and where there was evidence that all entries were made by the defendant's agents (MCLA § 600.2146).

12. AGENCY—EVIDENCE.

Evidence that the doctor who operated on the plaintiff in a malpractice action was an agent of defendant hospital was properly admitted where the hospital records, as well as a witness's testimony, supported the plaintiff's claim of an agency relationship.

Appeal from Macomb, Alton H. Noe, J. Submitted Division 2 March 31, 1971, at Detroit. (Docket No. 9136.)   Decided May 19, 1971.   Leave to appeal denied, 385 Mich 774.

Complaint by John R. Bryson, administrator of the estate of William Dover Bryson, deceased, against Dr. Sanford Stone and others for negligence and breach of an implied contract. Judgment for plaintiff. Defendants appeal. Affirmed.

*Lopatin, Miller & Bindes* (*Michael H. Feiler,* of counsel), for plaintiff.

*Kitch, Suhrheinrich & Bess, P. C.,* for defendants.

Before: J. H. GILLIS, P. J., and FITZGERALD and T. M. BURNS, JJ.

FITZGERALD, J. On February 23, 1968, William D. Bryson filed a malpractice suit against Dr. Sanford Stone, individually and doing business as Fairwood General Hospital; Gertrude Stone, the doctor's wife and co-owner of the hospital; Fairwood Medical Center; and Dr. Ben Droblas, a hospital staff member. Plaintiff claimed that he went to the defendant hospital in September, 1965, for treatment of his injured right foot and ankle, that he was hospitalized and unnecessary tests were performed upon him, that during two subsequent hospitalizations unnecessary surgery called cervical sympathectomy was performed on both sides of his neck, and that he was not informed of the proposed surgery and did not consent to it.

Count I of the complaint alleged negligence and Count II alleged breach of an implied contract. Plaintiff sought damages of $300,000 plus interest and costs.

The defendants denied liability and raised as affirmative defenses the statute of limitations and the plaintiff's consent. Further, the defendants averred

that the complaint was inadequate and insufficient and failed to allege a cause of action.

On November 21, 1969, the day the jury trial commenced, defendants filed a suggestion of the death of Dr. Stone on October 24, 1969. At the conclusion of a lengthy trial, the jury returned a verdict of $56,000 against the estate of Dr. Sanford Stone and Gertrude Stone and found no cause of action as to Dr. Droblas, the hospital staff member.

The defendants' motions for no cause of action, judgment notwithstanding the verdict, a new trial, and a remittitur were denied February 9, 1970. Application for a delayed appeal followed and was granted. Subsequent to the trial, William D. Bryson died and John R. Bryson, administrator of his estate, was substituted as plaintiff appellee.

Additional facts will be stated during the discussion of the complex issues. Issues will be dealt with *seriatim*.

I. *Did the trial court err in denying defendants' motion for summary judgment?*

The defendants claimed that a complaint sounding in malpractice is insufficient unless it reflects (1) what plaintiff contends is the applicable standard of practice required of the defendants; and (2) the specific manner and form in which the defendant is alleged to have violated that standard, citing *Simonelli* v. *Cassidy* (1953), 336 Mich 635. They claim that plaintiff's complaint is insufficient as a matter of law because it sets forth conclusionary propositions as to the tests, surgery, and information supplied when it should set forth specifically how the defendants violated the standard of practice with respect to the tests, surgery, and information supplied.

Plaintiff urges that the pleadings did state exactly what defendants should have done and how

they violated the standard of care in the community because the complaint alleges that the surgeries were unnecessary and should not have been performed. They claim further that defendants failed to inform William Bryson of the surgeries and obtain his consent thereto, which defendants should have done.

Defendants' chief reliance is placed on *Simonelli, supra,* a malpractice case in which the trial court had held that the declaration did not state a cause of action. On appeal the Supreme Court affirmed.

Count I of the plaintiff's declaration in that case had alleged that the defendant was employed by the plaintiff to examine, diagnose, and treat "a certain malady which existed on the left side of the neck of plaintiff's wife"; that defendant "induced   *   *   * plaintiff's wife to undergo an operation for said malady"; that he "did operate" and "did cut the carotid artery"; and that the "defendant   *   *   * did fail to properly diagnose the condition of plaintiff's wife and so unskillfully and negligently conducted himself in the treatment and surgery of plaintiff's wife" that she was permanently injured.

In Count II plaintiff said it was the duty of defendant "to take proper care and precautions to avoid a sudden blocking off of the blood to the head by the cutting of the carotid artery, to take proper precautions and make proper preparations in the event it would be necessary to block off the carotid artery"; and that said defendant was negligent in that he failed to carry out those duties, all of which resulted in injury to plaintiff's wife.

Plaintiff claimed that an action for malpractice is based upon facts peculiarly within the knowledge of the defendant and that it would be impossible for the plaintiff to allege with any degree of particular-

ity the wrongful acts committed by the defendant as well as those things which he should have done.

The Supreme Court unanimously rejected plaintiff's position, and held that the allegations did not constitute a sufficient statement of facts to establish a cause of action. Specific omissions noted by the Court were the plaintiff's failure to allege what was the proper way to operate or that the cutting of the artery itself was negligent, the failure to state the type of disease or malady involved, the accepted method of diagnosing it, and the proper treatment when discovered.

The rule established in the *Simonelli* case puts a heavy burden on the plaintiff in a malpractice suit. However, the plaintiff herein has met the burden in paragraph number 4 of his complaint, as follows:

"That the said defendants, each and any of them, did breach their duties owed to the plaintiff in the following particulars:

"(a). In performing tests upon the plaintiff which were not necessary as a result of the condition for which he came to the defendant hospital for.

"(b). In doing surgery to the plaintiff's neck on subsequent hospitalization wherein none of the tests performed or any of the examinations disclosed any basis for the cervical sympathectomys [*sic*] that were done both on the right and the left side.

"(c). In failing to inform the plaintiff herein of the surgery that was performed by them, where in fact, the surgery was not necessary.

"(d). In failing to obtain the consent of the plaintiff before surgery was performed which in fact, constituted an assault and battery.

"(e). In failing to properly inform the plaintiff of the surgery that was going to be performed and in failing to tell him the purpose of this surgery.

"(f). In doing surgery on the plaintiff which was not warranted and which was a departure from the standard of practice of this and similar communities, for the plaintiff's condition for which he was hospitalized at the defendants' hospital on three different occasions, did not warrant the cervical sympathectomy on the left or the right side which was performed by the defendants herein through their agents and servants."

The instant case is distinguishable from the *Simonelli* case because plaintiff here alleges that no neck malady existed and, therefore, no surgery was necessary. This is not a case of negligently-performed surgery, but rather it is a case where no surgery should have been performed. Plaintiff avers negligence in doing *any* surgery on him. See comment on *Simonelli* in 1 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 197.

II. *Were plaintiff's proofs at trial at such variance with his pleadings that they constituted a nonpermissible change in theory?*

The defendants argue that the complaint and plaintiff's answers to the interrogatories stated that the unnecessary surgeries were cervical sympathectomies whereas at trial the hospital records showed that the surgeries were a scalene node biopsy and carotid body excision. Further, they point out that by letter dated January 26, 1969, Dr. Lakin, plaintiff's expert medical witness, advised plaintiff's attorney that a right carotid body excision was involved as opposed to a cervical sympathectomy. Plaintiff made no attempt to amend the complaint or to file supplemental answers to the interrogatories. The defendants moved for a mistrial and to strike testimony in part because of the alleged

pleading of one cause of action and proof of a different one.

Plaintiff replies that it is merely a matter of nomenclature—not theory of recovery. No matter what surgery was performed or what it was called, it was unnecessary and without the plaintiff's informed consent. Further, plaintiff states that he believed he had had sympathectomies performed and that Dr. Lakin could not determine from a physical examination which procedure was performed since an identical cervical incision is required.

Dr. Lakin's letter of January 26, 1969, reflected a change in opinion based upon review of the defendant hospital's records. After receiving the letter, plaintiff's attorney should have moved for leave to amend the complaint, but he did not do so. GCR 1963, 118.1 allows amendments at trial to conform to the evidence when the court is satisfied that no prejudice would result therefrom. However, no amendment was sought by plaintiff's attorney, who maintains that none was needed and that defendants have shown no prejudice or surprise.

In *Denno* v. *Providence Hospital* (1969), 19 Mich App 547, this Court reversed a trial court award for the plaintiff. This Court said that permitting plaintiff to change her theory of the cause of action from negligence in failing to put guard rails on the hospital bed to negligence in selection of the bed prejudiced the defense on the merits. The *Denno* case can be distinguished on the basis that in the present case the theory of recovery was that any surgery was unnecessary and that, therefore, the name of the surgery was mere surplusage and a mistake in the name did not prejudice the defend-

ant. Futher, it was plaintiff's contention that he did not consent to any surgery.

III. *Is the judgment void because of the death of Sanford Stone before trial?*

The defendants submit that the cause of action against Sanford Stone was abated by his death. Dr. Stone died about a month before the trial. At the time of trial, no estate had been established and, therefore, no representative of the estate was substituted as the defendant. The defendants claim that no valid judgment could be entered against Dr. Stone or his estate under the circumstances and that failure to so advise the jury was prejudicial to Gertrude Stone since the jury would not have returned a verdict solely against her, individually.

Plaintiff's rejoinder is that the judgment was against both Stones, jointly and individually, and that Mrs. Stone was a co-owner of the hospital and legally responsible for negligence of the hospital or its agents.

GCR 1963, 202.1, provides for substitution of parties after a death occurs. GCR 1963, 202.4, as amended October 9, 1964, effective January 1, 1965, permits substitution of parties by the Court of Appeals pending appeals.

While no motion for substitution of party defendant appellant has been made, substitution could still have been granted by this Court if any party or representatives of the deceased had asked for it. The defendants' reliance on GCR 1963, 202.1(2), is misplaced since the plaintiff's cause of action survived Dr. Stone's death. MCLA § 600.2921 (Stat Ann 1962 Rev § 27A.2921). 1 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 464.

IV. *Did the statute of limitations bar that portion of plaintiff's claim relating to medical treatment rendered before February 23, 1966?*

The defendants argue that since this lawsuit was commenced on February 23, 1968, and the statute of limitations for malpractice is two years, that part of plaintiff's claim which occurred before February 23, 1966, is barred.

Plaintiff says the issue is frivolous and does not discuss it. While we are inclined to agree, a case of this magnitude mandates consideration of such an allegation.

MCLA § 600.5805 (Stat Ann 1962 Rev § 27A-.5805) does limit commencement of malpractice suits to two years after the claim accrued. MCLA § 600-.5838 (Stat Ann 1962 Rev § 27A.5838) states a claim based on malpractice accrues at the time the person discontinues treating the plaintiff as to the matters out of which the claimed malpractice arose.

The plaintiff was hospitalized at Fairwood General Hospital in the fall of 1965 and in March and April of 1966. The hospitalization in 1965 is not barred by the statute of limitations since there was evidence that tests were performed then and the defendants continued treating plaintiff relative thereto after February 23, 1966. The statute of limitations is clearly inapplicable.

V. *Did the trial court err in failing to grant defendants' motion for a change of venue?*

The defendants cite extensive adverse publicity concerning criminal and other charges made against the various doctors on the medical staff of Fairwood General Hospital as well as certain other hospital personnel. There was further extensive publicity

about massive judgments rendered against the hospital or members of its medical staff. Defendants say this made it impossible for them to properly *voir dire* a jury without in fact prejudicing the jury. That is, if prospective jurors were asked about the newspaper, radio, and television stories relating to the defendants, it would prejudice the jurors even if they hadn't known of the publicity before.

The plaintiff counters by saying that the record of the jury selection showed that an impartial jury was chosen. The plaintiff argues, and rightly so, that much of the defendants' criticism is applicable to the jury system in general and has no unique application to this case.

While defendants do show unusually extensive publicity and the trial judge might conceivably have granted the motion for change of venue, there was no abuse of his discretion in denying the motion. Most of the adverse publicity occurred three years before the trial. The trial court thought that an effort should be made to select a jury that could render a fair and impartial verdict before granting a change of venue. This was not an abuse of his discretion. *People* v. *Freeman* (1969), 16 Mich App 63.

VI. *Was it reversible error for the trial court to permit testimony that Dr. Droblas was not licensed to practice medicine in Michigan?*

The defense claims that the fact that defendant Dr. Droblas was not licensed in Michigan was not material to the allegations because the defendants were charged with violating the standard of practice in the community and not with failure to have a medical license.

The plaintiff argues that the lack of license was relevant to the breach of contract claim and also,

since Dr. Droblas was a defendant and testified, it was relevant to his professional qualifications.

We find defendants' contention without merit. No reversible error resulted from allowing the jury to learn that one of the defendants in a malpractice suit wasn't licensed to practice medicine in Michigan. *Janssen* v. *Mulder* (1925), 232 Mich 183, relied on by the defendants, is not in point.

VII. *Did plaintiff's testimony regarding the conversations with Sanford Stone violate the dead man statute?*

The defendants urge that plaintiff's testimony regarding conversations with the deceased was barred by the dead man statute because no material portion of the testimony was supported by some other material portion.

The plaintiff answers this by pointing out that parts of his testimony were corroborated by the testimony of Sol Mendelson, Dr. Droblas, and Dr. Lakin, and that the statute does not require that all of his testimony be supported by other testimony. Further, the defendants' hospital records corroborated plaintiff's claim and these are admissible under the statute.

MCLA § 600.2166 (Stat Ann 1971 Cum Supp § 27A.2166), known as the dead man statute, requires only that some material portion of plaintiff's testimony be supported by some other material evidence tending to corroborate his claim. The hospital records were admissible under the third paragraph of the section, and Dr. Lakin's testimony with regard to them constituted material evidence tending to corroborate plaintiff's claims. Further, very little of the testimony of plaintiff that defend-

ants objected to as violating the dead man statute actually involved conversations with the deceased.

VIII. *Was there error in the admission of the hospital records under the business entries statute?*

The defendants contend that the total record of the defendant hospital relating to the plaintiff should not have been admitted because there were entries by persons not shown to be agents or employees of the defendants.

The plaintiff retorts that while the trial judge did initially admit the entire record, he later ruled that it was too difficult for the jury to understand, but did permit Dr. Lakin and Dr. Droblas to make extensive references to them. Additionally, plaintiff says that there was substantial testimony from Mr. Mendelson and others that Dr. Slutzky was an agent of the hospital. References to Drs. Kanter and Rosen were of no moment and could not have caused any harm, plaintiff claims.

MCLA § 600.2146 (Stat Ann 1962 Rev § 27A-.2146) is the business entry statute and hospital records are admissible thereunder to show recorded events and acts. *Osberry v. Watters* (1967), 7 Mich App 258, states that ordinarily opinion portions of hospital records are inadmissible because of the inability to cross-examine the expert. However, that rule did not keep out nurses' notes and recorded observations in *In re Searchill Estate* (1968), 9 Mich App 614, nor hospital records of the plaintiff's treatment and diagnosis in *Shinabarger v. Phillips* (1963), 370 Mich 135. For a similar holding, see *Simons v. Besse* (1968), 14 Mich App 257. Cf. *People v. Herrera* (1968), 12 Mich App 67, *reversed on other grounds,* 383 Mich 49.

There was no error in admitting the hospital records under the business entries statute as interpreted and delineated in the foregoing cases.

IX. *Did the trial court err in admitting testimony relating to the acts of Dr. Slutzky?*

The defendants argue that there was no evidence that Dr. Slutzky was an agent of the hospital and, therefore, the defendants would not be liable for the surgery he performed on the plaintiff.

The plaintiff relies on the hospital records and the testimony of Sol Mendelson as constituting sufficient proof of an agency relationship.

The plaintiff's position is valid. A review of the record discloses that Mendelson's testimony showing an agency relationship is supportéd by the hospital records as well as other testimony.

X. *Did the defendants have a fair trial?*

The remaining issues raised by the defendants may be considered as pertaining to the fairness of the trial. While some of defendants' brief is repetitious of issues already presented, they assert that the trial judge by facial expressions indicated disbelief, annoyance, exasperation, and consternation; that he conducted the trial improperly; failed to make requested rulings; failed to excuse the jury during controversial arguments; and failed to give proper jury instructions. Defendants also complain about plaintiff's counsel's trial conduct.

The transcript consists of seven volumes which have been carefully reviewed.

There was no showing of overt or disguised prejudice on the part of the trial judge. The jury instructions which the defendants allege were erroneous are fair and accurate when read as a whole.

This was a vigorously-tried case and trial counsel for both parties were aggressive in their pursuit of victory. That is not reversible error and each is to be commended as an advocate for his client.

The totality of the record reveals no reversible error and mandates an affirmance.

Affirmed. Costs to appellees.

All concurred.